# Childress *v.* Calloway.

*Statutory Real Action, in nature of Ejectment.*

1. *Sale of lands for taxes; certificate and deed to purchaser or assignee.* Under the provisions of the Revenue Law of 1868, which was in force in 1870–71, when lands were sold for unpaid taxes, and purchased by the State, the certificate of purchase was transferrable only by the auditor of public accounts, though a certificate of redemption was required to be made by the probate judge; and a conveyance executed by the probate judge to a person who is not the original purchaser, and to whom the certificate of purchase has not been assigned by the auditor, being without legislative authority, is a mere nullity.

2. *Color of title, and adverse possession.*—A conveyance which, though invalid, may operate as color of title, does not draw to it constructive possession, and does not, of itself, tend to prove adverse possession; though, where there is title, or color of title, and no antagonistic possession is shown, actual possession of a part of the land will be regarded as possession of the entire tract within the boundaries specified.

3. *Adverse possession invalidating conveyance.*—Cutting and removing timber from wild lands, unfit for any other use, may amount to a possession, and, when done under color of title, may constitute a disseizin;

[Childress v. Calloway.]
but cutting a small quantity of timber on two occasions, at an interval of one year between the two, when the land is shown to be good for grazing and farming purposes, and suitable for a homestead, "is not an act so distinct, notorious and continuous" as will invalidate a conveyance by the owner of the legal title.

4. *When recovery may be had on tax-title.*—The plaintiff in ejectment, or the statutory action in the nature of ejectment, must recover on the strength of his own title; and when he claims under a tax-title, at a sale made prior to the 12th January, 1879, he must show a compliance with all the provisions of law antecedent to and authorizing the sale, no presumptions being made in favor of its regularity.

5. *Possession as evidence of title; outstanding title in third person.* Prior peaceable possession, under claim of ownership, is, ordinarily, sufficient to authorize a recovery against a mere trespasser; and he can not defeat it by showing an outstanding title in a third person, with which he does not connect himself; but, where plaintiff's prior possession had ceased before the defendant entered, the latter may show the outstanding title of his vendor at the time of such prior possession.

APPEAL from the Circuit Court of Baldwin.

Tried before the Hon. WM. E. CLARKE.

This action was brought by William Childress against Rufus B. Calloway, tenant in possession, to recover the possession of certain parcels of land, which were described in the complaint as subdivisions of sections eleven (11) and two (2), township nine (9), range four (4), east; and was commenced on the 29th March, 1883. William R. Orrell was let in to defend, as landlord of the defendant; and he entered a disclaimer as to some portions of the land described in the complaint, defending only as to three parcels, containing 320 acres; and as to these parcels he pleaded not guilty, adverse possession for five years, and adverse possession for three years with a suggestion of the erection of valuable improvements. On the trial, as appears from the bill of exceptions, the plaintiff deduced title to the lands under a conveyance executed to him by the probate judge of said county, dated August 29, 1874, and a subsequent deed executed for the purpose of correcting some inaccuracy in the first; and he reserved exceptions to the rulings of the court excluding these deeds as evidence. As these deeds are sufficiently described in the opinion of the court, it is unnecessary to state their contents. Orrell claimed the lands under a conveyance to himself from the widow and children of John V. Wallace, deceased, who died in 1864; and he offered in evidence said conveyance, which was dated the 13th June, 1877, and a patent from the United States to said Wallace, which was dated December 1st, 1860. The plaintiff objected to the admission of the deed to Orrell as evidence, "because the evidence shows that defendant had admitted plaintiff's title, and because plaintiff was, at the date of said deed, in adverse possession of the land therein described;" and he excepted to the overruling of these objections.

9

Before the introduction of the defendant's deeds, the plaintiff had testified, as a witness in his own behalf, " that under his said deeds " [from the probate judge], he went, to the best of his judgment, into possession of the lands now in controversy, and walked across and all over them; that he got possession of the first deed on the 29th August, 1874; that in June, 1875, and perhaps in the fall of 1876, he cut a small quantity of pine timber from said lands; that said Orrell went upon the land in the latter part of May, 1877, built upon it, and commenced to possess and live on it; and that said Orrell has, since his said entry, and during his occupancy, cut and used from the land timber to the value of $350." He testified, also, on cross-examination, " that he did not at any time cultivate, inclose, or build on any part of said land, but had, in the fall of 1875, and he believed in the fall of 1876, cut a small number of pine logs from each of said parcels, but not more than one hundred in all; that he did not cut any timber in any other years; that on sundry occasions, in passing across the land, through which a road ran, he saw other persons standing on it, or traversing it; that he built a log camp, in 1875, on other lands he owned near the lands sued for, but not on said lands; that he took no possession of the land after getting the second deed from the probate judge, nor did any act thereon whatever, save to travel across it. He testified, also, that said lands were partly pine, partly hammock, black-jack, water-oak and hickory land, and were in fact principally valuable for the pine timber; that it was well suited for a homestead, was good grazing land, and moderate farming land; that in May, 1877, hearing that Orrell had gone on the lands, he went there, and found Orrell getting boards on some land near this, and conversed with him, and told him not to buy the land, as he (witness) claimed it, and forbade him to build on it; that said Orrell answered, ' he thought there must be some mistake about it, but he would go and see the parties he bought from;' that he (witness) went immediately to Judge Gasque " [probate judge], "and got him to make said corrected deed; that said Orrell, as witness learned, moved on the land within fifteen days after said conversation, and, with those claiming under him, has continued to occupy, cultivate and live on said land, claiming it adversely as his own; that he (witness) had no more to do with said land after getting said corrected deed, save in court by suing defendant, and relied on his supposed right of action against Orrell for damages; that he thought his deed gave him the possession of the land, and did nothing further on the land, nor further disturbed Orrell's possession, though he afterwards crossed over a portion of it."

This was all the evidence in reference to the plaintiff's alleged

possession of the land, and was all the evidence before the jury, on the part of the plaintiff, when he moved to exclude the defendant's deeds, as above stated. Said Orrell testified, on behalf of the defendant, "that he went upon said lands in the year 1877, just a few days before or after the execution of said deed to him by the Wallaces, made improvements, and built thereon, under said deed; and that if he entered before getting the deed, it was on the promise of said grantors to make said deed, which they did make shortly afterwards." To this portion of said Orrell's testimony, "about his making the improvements on the promise of said Wallaces to make him a deed, plaintiff objected, because no bond for title, or other written contract, was shown;" and he duly excepted to the overruling of the objection. Orrell further testified, "that he built a dwelling and other houses, stables, fences and inclosures, and planted orange and apple orchards, and cultivated the lands named in his plea, in the year 1877, and lived on the lands until a recent period, when he placed said R. B. Calloway on the land as his tenant, who had occupied the land under him ever since; that the lands were suitable in part for cultivation, and for orange culture, and in bulk were mainly suitable for a stock-range and for stock-raising; and that his improvements are now worth $600."

This was all the evidence; and the court thereupon charged the jury, at the request of the defendant, that they must find for him, if they believed the evidence. The plaintiff excepted to this charge, and he now assigns it as error, together with the several rulings of the court in the admission and exclusion of evidence, as above stated.

JAS. COBBS, for the appellant.—It was material for the plaintiff to show his prior possession, and the extent thereof; and whether his tax-deeds were good or bad, they were color of title, and were competent as evidence to show the extent of his possession.—*Dillingham v. Brown*, 38 Ala. 311; *Allen v. Kellam*, 69 Ala. 447; *Herbert v. Hanrick*, 16 Ala. 596; *Bancum v. Jenkins*, 65 Ala. 268; *Riggs v. Fuller*, 54 Ala. 145; *Wilson v. Glenn*, 68 Ala. 386; *Bell v. Denson*, 56 Ala. 448; *Ellicott v. Pearl*, 10 Peters, 412. The evidence shows that Orrell had not purchased the land, when plaintiff first found him on it, and forbade him to build, and that he then left it, thereby admitting plaintiff's possession and right. His subsequent entry, made fifteen days afterwards, was a trespass, and he could claim nothing, as against plaintiff, under his deed from the Wallaces. *Rivers v. Thompson*, 43 Ala. 640; *Ladd v. Dubroca*, 61 Ala. 28; *Bridges v. McLendon*, 56 Ala. 327; *Bernstein v. Humes*, 60 Ala. 602; *Bradshaw v. Emory*, 65 Ala. 208; *Russell v.*

[Childress v. Calloway.]

*Erwin*, 38 Ala. 48; *Pugh v. Youngblood*, 69 Ala. 296. Being himself a trespasser, defendant could not set up an outstanding title in a third person·; nor could he, in any event, set up the outstanding title of the Wallaces, who were barred, before he purchased, by the expiration of five years from the tax-sale. *Lassiter v. Lee*, 68 Ala. 290; *Pugh v. Youngblood*, 69 Ala. 296; 15 La. Ann. 76.

CLOPTON, J.—The appellant brought the statutory real action to recover the possession of lands, to which he claimed title under two deeds, executed by the probate judge—one, August 29, 1874, and the other, May 21, 1877; the latter deed having been made to correct a misdescription of the lands in the first deed.

From the recitals of the deeds it appears, that the lands in controversy were sold by the tax-collector, in May, 1871, for taxes due for the year 1870, and were bid off in the name of the State. By the Revenue Law in force at the time of this sale, the tax-collector was required, when real property was sold for taxes, and purchased by an individual, to make out and deliver to the purchaser a certificate of purchase, which was assignable by indorsement, and the assignment thereof vested in the assignee and his legal representatives all the right and title of the original purchaser. If the real property was bid off in the name of the State, the tax-collector was required to make a certificate of purchase to the State, which was transferable by the Auditor, the same as a certificate of purchase made to an individual.

Real property, sold for taxes, and purchased by the·State, was subject to the same rules of redemption as when purchased by individuals. The right to redeem was conferred upon " the owner, his heirs, or legal representatives ;" and upon the application of any party to redeem, the probate judge, being satisfied of his right, upon payment of the amounts required by the law, issued a certificate of redemption, which was countersigned by the treasurer, and was not evidence of such redemption, without the signature of the treasurer. If the real property was not redeemed within the time allowed by law, all the right, title and interest of every person whomsoever, in and to such real property, were transferred to, and vested absolutely in the State.

These provisions of the Revenue Law show, that if real property, sold for taxes, and purchased by the State, was redeemed, the probate judge issued a certificate of redemption, and, if not redeemed, the mode of transferring the title of the State, provided by the law then in force, was by an indorsement of the certificate of purchase by the Auditor.—Acts 1868, pp.

[Childress v. Calloway.]

319–321. By the act of March 8, 1876, the Auditor was authorized, when one or more parcels, or a large parcel of land is included in one certificate of purchase, instead of transferring such certificate to any person paying out a portion of the lands, to give such person a certificate, showing such payment, and including a description of the lands so paid out.—Acts 1875–6, p. 100.

A conveyance, made by the probate judge, without legislative authority, does not pass the title of the owner of lands sold for taxes. The only authority conferred upon the probate judge, in this respect, by the Revenue Law of 1868, or the law of 1874, was, to make a deed to the purchaser, or the assignee of the certificate of purchase, after the expiration of the time for redemption, the land remaining unredeemed. The plaintiff was neither the purchaser, nor the assignee of the certificate of purchase. The deeds offered to be introduced in evidence are inoperative as muniments of title—are mere nullities.

The defendant was, at the commencement of the suit, in possession of the lands as the tenant of William Orrell, who claimed under a conveyance from the widow and heirs of John Wallace, who was the patentee, and who died in 1864. The patent and conveyance were in evidence. It is insisted, that the deeds of the probate judge constituted color of title, although invalid, and are admissible in evidence to show possession in the plaintiff, and the extent of his possession, at the time the conveyance to Orrell was executed. A conveyance which is invalid, but may, under proper circumstances, operate as color of title, does not draw to it constructive possession, and, by itself, does not tend to prove adverse possession. While color of title is not an essential element of adverse possession, it is necessary that the possession be actual, visible and notorious. Where there is title, or color of title, possession of every part of the land is not required; for, in such case, if there be no antagonistic possession, a possession of a part will be regarded as a possession to the boundary specified. "The possession must always be as definite as the character of the land is susceptible of, and must be evidenced by public acts, such as a party would exercise over his own property, and would not exercise over another's; must be continued, and so notorious, that the owner may reasonably be presumed to have notice of the possession, and of the claim of title."—*Farley v. Smith*, 39 Ala. 38. The cutting and removing of timber from wild lands, unfit for any other use, may amount to a possession, and, if accompanied by color of title, may constitute a disseizin. But the cutting of a small quantity of timber on two occasions in 1875 and 1876, from land which, although principally valuable for the pine timber, is good grazing, and moderate

[Childress v. Calloway.]

farming land, well suited for a homestead, and possession is not continued, is not an act so distinct, notorious and continuous, as the rule requires, to vitiate a conveyance.—*Farley v. Smith, supra; Rivers v. Thompson*, 46 Ala. 335. Unless accompanied by evidence from which an inference may properly be drawn, that the plaintiff was in the actual, visible possession of the lands at the time the conveyance to Orrell was executed, the deeds are not admissible to show the extent of possession.

It is sufficient, however, to sustain the ruling of the court, that the deeds were offered, not as an element of an adverse possession, but as a muniment of title, and as such are inoperative.—*Boykin v. Smith*, 65 Ala. 295.

To maintain the statutory real action, there must exist a present right of entry and of possession on the part of the plaintiff, and a wrongful possession by the defendant.—*Callan v. McDaniel*, 72 Ala. 104. " The general and well-established rule, in cases of ejectment, is, that the plaintiff is required to recover, if at all, upon the strength of his own title, and not upon the mere weakness of his adversary's."— *Wilson v. Glenn*, 68 Ala. 383. If his right to recover depends upon a tax-title, having its origin in a sale made prior to the passage of the act of February 12, 1879, he must show that all the provisions of the law, antecedent to, and authorizing the sale, have been substantially complied with. No presumption can be raised to cure any substantial defect in the proceedings, and the proof of regularity devolves upon the party who claims under such title.—*Oliver v. Robinson*, 58 Ala. 46.

As against a *mere trespasser*, " a bare peaceable possession by an actual occupant, under claim of ownership, is ordinarily sufficient to authorize a recovery; and such trespasser can not defend successfully by showing an outstanding title, with which he in no way connects himself." Actual occupancy, and the fact that the defendant is a mere trespasser, must concur, to preclude the defendant from showing paramount title in a third person. Prior possession, if sufficient to create a presumption of title, may be rebutted, by showing title in the defendant, or an outstanding title in another where the defendant is not a mere trespasser.— *Wilson v. Glenn, supra*. Although the plaintiff had prior possession, with a claim or color of title, if his possession had ceased, and he was not in the actual adverse occupancy of the lands, at the time the conveyance to Orrell was executed, the defendant may show such outstanding title to defeat a recovery.

The legal title was in Orrell, and the only inference that can be properly drawn from the evidence, as set out in the bill of exceptions, is, that when the plaintiff ceased to cut timber off

[Mobile & Montgomery Railway Co. v. Brewer.]

the lands, his actual possession ceased, and he was not in the actual possession at any time thereafter.

There is no error in the charge of the court, and the judgment is affirmed.