| 78 | 61 |
| 93 | 111 |
| 78 | 61 |
| 97 | 596 |
| 78 | 61 |
| 98 | 187 |
| 78 | 61 |
| 115 | 460 |
| 78 | 61 |
| 123 | 130 |
| d123 | 133 |
| 78 | 61 |
| 137 | 283 |
| 78 | 61 |
| 141 | 460 |
| 141 | 463 |
| 78 | 61 |
| 143 | 458 |

# Burks v. Mitchell.

### Statutory Action in nature of Ejectment.

1. *Title acquired by adverse possession.*—An uninterrupted adverse possession of land for ten years clothes the possessor with a title which will either sustain or defeat an action of ejectment.

2. *Actual and constructive possession.*—Actual possession of part of a tract of land, under claim and color of title to the whole, draws to it constructive possession of the entire tract within the boundaries specified; but the possession of a mere intruder extends only to the part actually occupied by him, although he occasionally cuts timber from the unin-closed portions; and a purchaser from him, entering under a writing which constitutes color of title to the whole, acquires no title to the entire tract until his own possession has continued ten years.

APPEAL from the Circuit Court of Coosa.

Tried before the Hon. JAMES E. COBB.

This action was brought by John Burks, to recover the possession of the south-east quarter of section seventeen (17), township twenty-four (24), range twenty (20); and was commenced on 16th February, 1882. William Tillery was the original defendant, but, by consent, Thomas H. Mitchell was substituted in his stead, who held possession as county superintendent of public schools. The cause was tried on issue joined on the plea of not guilty; and on the trial the plaintiff reserved a bill of exceptions, in which the facts are thus stated:

"The plaintiff examined one W. C. Lackey as a witness, who testified, that in 1861 he moved to the neighborhood of the lands now sued for, and has lived near to and adjoining said lands ever since that time; that one W. P. Bullard was at that time living on said lands, had a dwelling-house and out-houses, and some fifteen or twenty acres cleared, under fence, and cultivated; that the balance of the tract was wild, or wood-land, covered with timber, and not in any way separated from the adjoining wild lands; that said Bullard cut timber on these lands, over different parts of it, for farm purposes, every year from 1861 to 1867, and must have thus cut timber from all parts of said lands; that he thus cut and used timber for farm purposes, during those years, as any one else would have done for farm purposes; that said Bullard claimed said lands during these years, from 1861 to 1867, as his own, and, on the 2d September, 1867, sold said land to the plaintiff in this suit, and made to him a paper writing, which witness wrote, and saw

[Burks v. Mitchell.]

Bullard sign and deliver." The writing, which was produced, was neither acknowledged nor attested, and was in these words: "This is to certify, that I have bargained and sold my claim on the east half of section 17, range 20, township 24, to John Burks, for the sum of one hundred dollars;" signed by said Bullard. "Said witness testified, also, that said Bullard moved out of the houses soon after this paper was executed, and plaintiff moved into them as he moved out; that plaintiff remained on said lands, undisturbed, from that time until the 10th September, 1878, when he was sued for the same in the name of the State, for the use of the public schools for said township, and was ejected from the land in that suit some two years after- wards; that during the time between September, 1867, and the commencement of said suit against him, *which was less than ten years*,\* plaintiff cultivated the cleared land on the tract, cleared some twenty-five acres more, fenced the same, and cul- tivated as he cleared them; that he cut timber from the wooded parts of the land, for rails, boards, house-logs, and fire- wood, and for such other purposes as timber is generally used on farms; that he cut and used timber constantly, during these years, for ordinary farm uses, from nearly every part of the lands that were wild and wooded. Plaintiff proved substan- tially the same acts of possession and character of possession by said Bullard from 1861 to 1867, and by plaintiff himself from 1867 to the 10th September, 1878, *less than ten years*,\* as testi- fied to by said Lackey. Defendant then proved his possession of said lands as school superintendent for township twenty- three (23), and offered in evidence a grant from the United States, dated prior to 1830; and plaintiff agreed that by said grant the legal title to said lands was conveyed to the State of Alabama, in trust for the use of said public schools. Plaintiff claimed the right to recover the whole of the lands sued for, and waived a charge applicable to a part of the lands. There- upon, the court charged the jury, on request in writing, that they must find for the defendant, if they believed the evidence; to which charge plaintiff excepted, and thereupon took a non- suit."

The charge of the court is now assigned as error.

L. E. Parsons, Jr., for appellant.

F. L. Smith, *contra*.

---

\*This seems to show a mistake in the dates, as copied in the tran- script; that 1867 ought to be 1869.                    Rep.

[Burks v. Mitchell.]

SOMERVILLE, J.—It may be admitted to be a settled rule of law in this State, that an adverse possession of land, which continues unbroken for ten years, will confer a title which will sustain as well as defeat an action of ejectment. As said in *Barclay v. Smith*, 66 Ala. 230, it "arms such holder with all the powers of offense and defense which an unbroken chain of title confers."—*Farmer v. Eslava*, 11 Ala. 1028 ; *State v. Conner*, 69 Ala. 212.

The record shows that the plaintiff, Burks, has not had adverse possession of the lands in controversy for so long a period as ten years. Admitting, therefore, that the instrument under which he held, by attempted conveyance from Bullard, constituted color of title, and that his occupancy of a part of the lands was extended by this defective paper writing so as to be co-extensive with the entire described premises, he can not recover on the strength of his own possession alone. This, as we understand it, he does not seek to do ; but the effort is to supplement his possession, by connecting it with that of his alleged vendor, Bullard, so that the two possessions coupled together shall extend back, and thus cover the requisite period of ten years, upon the strength of which it is contended the present action can be maintained. If, then, Bullard never had adverse possession of the entire tract sued for, including the uninclosed woodland, no recovery can be had by the plaintiff, and the charge given by the court must be adjudged free from all error ; a right of recovery to a part having been expressly waived by the plaintiff *in judicio*, unless there could be a recovery for the whole.

The premises sued for are shown to have been a portion of the public school lands conveyed by the General Government to the State, as trustee, for the use of schools, prior to the year 1830. The appellee, who was made defendant in ejectment, is shown to have been in possession of the lands as superintendent of public schools for the township, having recovered them recently from the plaintiff in a statutory real action. Bullard appears to have been a mere intruder on these lands taking possession, without color of title, in the year 1861. Of the whole tract in controversy, which embraces one hundred and sixty acres, only fifteen or twenty acres were cleared, inclosed by fence, and cultivated. The remainder was uninclosed wood-land, not separated in any way from adjoining lands of the same character. Bullard had a dwelling-house upon the cleared portion, with out-houses attached. He is not shown to have exercised any other act of ownership over the woodland, except to cut timber, from nearly every part of it, "for farm and house purposes," during the six years of his alleged

[Parker v. Wimberly.]

possession, extending from 1861 to 1867, when he sold to the plaintiff.

There is an important and well-settled distinction between the possession taken of land by one who enters with color of title, and one who enters without it. ·The possession of ·the latter, when claimed to be adverse, is confined to the premises actually occupied by him—or strictly to a *possessio pedis;* whereas the possession of the former is generally construed to be co-extensive with the boundaries described in the written instrument under which he claims title.—*Dothard v. Denson,* 72 Ala. 541; Angell on Lim. p. 401, § 400; *Buchanan v. The State,* 73 Ala. 47, 50; *Bell v. Denson,* 56 Ala. 444; Trial of Title to Land (Sedgw. & Wait), §§ 766-7; *Stovall v. Fowler,* 72 Ala. 77.

Under this principle, Bullard's possession must be confined to the cleared portion of the land which he had inclosed by fence and actually occupied. The cutting of timber on the uninclosed wild lands, without anything to define the extent of the alleged claim, was not alone such evidence of ownership as to amount to possession adverse to the true owner. It could not, therefore, operate as a disseizin against him, nor aid in any manner in supplementing the time necessary to bar the rights of the holder of the legal title.—*Childress v. Calloway,* 76 Ala. 128; *Clements v. Hays,* 76 Ala. 280; *Parker v. Parker,* 1 Allen (Mass.) 245; *Hale v. Gliddon,* 10 New Hamp. 397.

In our opinion, the charge of the court was free from error, and the judgment is affirmed.