# Woods *v.* Montevallo Coal & Transportation Company.

### *Statutory action of Ejectment.*

1. *Ancient writings.*—A bond for titles, executed nearly thirty years before the commencement of the suit, coming from the custody of a person claiming an interest in the land, and unaccompanied by any circumstance casting suspicion on its genuineness, is admissible as evidence without any proof of its execution.

2. *Possession of purchaser under bond for title.*—The possession of a purchaser of land, holding only a bond for title, is presumptively adverse from the time of the payment of the purchase-money; and though the bond was executed by a person who had no title or authority to convey, and has never been recorded, it may constitute color of title.

3. *Record of judgment as evidence.*—The record of a judgment for or against a party is equally admissible as evidence against one who claims in privity with him, whether by blood, estate or law.

4. *Ancient writings.*—A receipt executed by an attorney of record for the plaintiff in a judgment, acknowledging payment and satisfaction thereof, over twenty years old is self-proving.

[Woods v. Montevallo Coal & Transportation Co.]

5. *Secondary evidence of lost deed.*—To justify the admission of secondary evidence of a deed, it is not necessary to prove its loss beyond all possibility of mistake, but is sufficient to prove its probable loss; and this may be done by a *bona fide* and diligent search fruitlessly made in the places where it was likely to be found.

6. *General reputation, or notoriety, as evidence.*—The existence of a fact can not be proved by general reputation, or notoriety; but, when the existence of the fact has been shown, such evidence is admissible to charge a person in the neighborhood with knowledge of it.

7. *Extent of possession, actual and constructive, under color of title.* When a person enters upon a tract of land, under a deed or writing which constitutes color of title, his actual occupancy and improvement of a part will generally be construed as a possession of the entire tract, co-extensive with the boundaries described in the deed or writing, unless there is an antagonistic possession; but, if the deed or writing purports to convey two separate and distinct parcels or tracts, to one of which the vendor has no title, an entry upon and occupation of the other tract by the purchaser, will not, of itself, operate as a disseizin of the owner of the tract to which the vendor had no title, since the actual possession of the one is not inconsistent with the constructive possession of the other; yet, even in such case, the constructive possession of the purchaser or occupant may, by acts of dominion or ownership asserted over the other tract, become adverse and ripen into a title to it, in the absence of an actual possession by the true owner.

8. *Adverse possession; what constitutes.*—To constitute an adverse possession, the use made of the land must be suited to its nature, adaptability and locality, and the acts of dominion must be of such character as may be reasonably expected to inform the true owner of the fact of possession and adverse claim.

9. *Same; question for jury.*—The question of adverse possession, under all the facts in evidence, is for the decision of the jury; and a charge is erroneous which withdraws it from their determination.

10. *Equitable title.*—In ejectment, or.the statutory action in the nature of ejectment, an equitable title is of no avail, apart from the operation of the statute of limitations.

APPEAL from Shelby Circuit Court.

Tried before Hon. S. H. SPROTT.

Thomas Andrew Woods brought a statutory action of ejectment against the Montevallo Coal and Transportation Company for the recovery of lands specifically described in his complaint. Issue was joined on the plea of general issue and the special plea of the statute of limitations of ten years adverse possession.

The plaintiff based his right of recovery upon his legal title arising from a grant of the lands sued for by the general government, and introduced in evidence the original *patent* from the Government to him, dated *June 1, 1857.*

The defendant offered in evidence without proof of its execution, a bond for title from Thomas Woods (father of plaintiff) to the Alabama Coal Mining Company, from which company the defendant claims by subsequent and ·intervening deeds. This bond for title. was dated *December 21,*

36

*1855.* To show that the purchase-money provided for in said bond for title, had been paid, the defendant introduced in evidence the record of the court proceedings in the case of *Thomas Woods v. Alabama Coal Mining Co.*, which were had in 1859. The defendant also introduced in evidence "the original *receiver's* certificate of purchase, dated Tuscaloosa, Ala. *December 20, 1854*, to the plaintiff, Thomas Andrew Woods, for the lands in controversy." There was no written transfer of this certificate. Defendant introduced a receipt from Thomas Woods, purporting to be executed by said Wood's attorneys, to the Alabama Coal Mining Co., for a portion of the purchase-money as agreed upon in the bond for title above referred to. The plaintiff severally and separately objected to the admission in evidence of said bond for title, the record of the court proceedings, the receiver's certificate, and the receipt given by Thomas Wood's attorneys.

The defendant introduced as a witness one Harris, and, among others, asked this question: "Was it not during such time generally understood and known in the vicinity where the lands in dispute are situated, that the Alabama Coal Mining Co. claimed them as their own?" The court overruled plaintiff's objection to this question, and plaintiff excepted.

The plaintiff excepted to the giving of the following charge at request of defendant: "If the jury believe from the evidence that the Alabama Coal Mining Company obtained from Thomas Woods, in 1855, the contract given in evidence, and that from thence on they claimed the lands involved in this suit under said contract; and that in 1863 said company sold these lands and others, including those upon which is situated the 'Irish Pit' testified about, and conveyed the same to the Montevallo Coal Mining Company, and that that company conveyed all of said lands to the Central Mining and Manufacturing Company in 1867; and that each of said companies was in the actual possession and occupation of said lands upon which the 'Irish Pit' is situate, and during all of said time openly and notoriously claimed title to the lands in controversy under their said deeds; and that such claim of title, while said lands were so claimed and occupied, was generally known in the neighborhood, and if they further believe that plaintiff resided in said neighborhood while said companies claimed said title, and that for more than ten years before the commencement of this suit, defendant, and those from whom it derives title, vere in the actual occupancy, controlling the lands upon which the pit known as the 'Irish Pit'

[Woods v. Montevallo Coal & Transportation Co.]

is situate, claiming the same as theirs under said deeds, and not recognizing the title of plaintiff, then they must find for the defendant, although they believe the Montevallo Coal Mining Company had a title to said 'Irish Pit,' and have none to the lands sued for."

C. G. WAGNER, JOHN T. HEFLIN, and W. S. CARY, for appellants.

TROY, TOMPKINS & LONDON, and WILSON & LYMAN, *contra*.

SOMERVILLE, J.—1. The bond for title, purporting to be executed by Thomas Woods on December 1st, 1855. or nearly thirty years prior to the commencement of this action, was properly admitted in evidence, in connection with the other proof showing the payment to him by the vendee of the purchase-money due for the land.

It came from one claiming an interest in the land unaccompanied by any circumstance casting suspicion on its genuineness. It was admissible, therefore, without any proof of its execution, and without preliminary proof of possession under it, if otherwise relevant—an inquiry which we next consider.—*White v. Hutchings*, 40 Ala. 253; *England v. Hatch*, 80 Ala. 247; 1 Greenl. on Ev. § 144; Starkie on Ev. (Sharswood), *521–23.

2. Where a vendee of land pays the purchase-money due by him to the vendor, his possession under a bond for title at once commences presumptively to be adverse.—*Beard v. Ryan*, 78 Ala. 37; *Morgan v. Casey*, 73 Ala. 223; *Drew v. Towle*, (30 N. H. 531); s. c., 64 Amer. Dec. 309. Such a written instrument, therefore, although executed by one having no title or authority to convey, and unrecorded, would be good as color of title to show the character and extent of the possession asserted, and the intent with which such possession is taken.—*Standlifer v. Swann*, 78 Ala. 88; *Ladd v. Dubroca*, 61 Ala. 25; Angell on Lim. § 404, notes 1 and 2; *Lea v. Polk Co. Copper Co.*, 21 How. (U. S.) 493.

3. The record of the court proceedings in the case of *Thomas Woods v. The Alabama Coal Mining Co.* was competent to show a collection by process of law of the purchase-money due on the land, the parties to that suit being respectively the vendor and vendee in the bond for title. The receipt, purporting to be executed by the attorneys of record for the plaintiff in that action, acknowledging the satisfac-

tion of the judgment, being over twenty years of age, proved itself, and was admissible to show such payment, a like rule applying to receipts as to other ancient writings.—Starkie on Ev. (Sharswood), *523–24. These proceedings were not *res inter alios acta*, because the existence and satisfaction of the judgment affected the status of the defendant in that judgment towards the lands in controversy, and the defendant in this suit derives title from that corporation. Where one claims in privity with another, whether by blood, estate, or law, he is in the same situation with such person as to any judgment for or against him, for judgments bind privies as well as parties.

4. The receiver's original certificate of purchase, although taken out in the name of the plaintiff, and not assigned by him in writing, being in the possession of the defendant, was presumptively there by lawful transfer, and was admissible at least to show color of title, and to subserve the function of an instrument of that character. The plaintiff, moreover, is in no condition to object to the admissibility of such certificate, as it tended also in one aspect to support his title.

5. The testimony of Holt sufficiently proved the probable loss of the deed to him from Williams to authorize the introduction of secondary evidence of its contents. To justify the admission of such evidence, it is not necessary to prove the loss of the document beyond all possibility of mistake. A reasonable probability of its loss is sufficient, which may be shown by a *bona fide* and diligent search fruitlessly made for it in places where it was likely to be found.—*United States v. Sutter*, 21 How. (U. S.) 170.

6. While the existence of a fact can not be proved by reputation or notoriety, yet when the fact is otherwise established its general notoriety in a neighborhood may be proved as competent evidence to charge one resident in such vicinity with knowledge of it.—*Humes v. O'Bryan*, 74 Ala. 64, 81; *Price v. Mazange*, 31 Ala. 701. Under this rule the question propounded to the witness Harris, and the answer elicited, were relevant.

7. It is not denied that the plaintiff is entitled to recover in this case, unless the defendant and those under whom it claims are shown to have had an adverse possession of the lands in controversy for at least ten years before the commencement of the suit, and under such circumstances as to operate as a bar to the action under the influence of the statute of limitations. The title of the plaintiff is shown by a

[Woods v. Montevallo Coal & Transportation Co.]

patent from the general government issued in June, 1857. The defendant seeks to overcome this by first showing a written agreement of the plaintiff's father to convey to the Alabama Coal Mining Company the tract in controversy (320 acres) and another tract of as much more, which appears to have been adjacent. The vendor, as we have seen, delivered to the vendee his bond for title, dated December 21st 1855, about eighteen months before the date of the patent, and the purchase-money was paid a few years afterwards. The land was unenclosed woodland, wild and mountainous, not suitable for cultivation, but valuable chiefly for timber, and prospectively perhaps for the mining of coal. These lands were afterwards included in a deed made by the Alabama Coal Mining Company to the Montevallo Coal and Mining Company, conveying between four and five thousand acres of wild lands, on some of which they were in actual occupancy operating a coal mine. The vendee of these lands, in April, 1863, conveyed between twelve and fourteen hundred acres of them to the Central Mining Company, including the 160 acre tract in controversy, and including two or three forty acre tracts which were in their actual occupancy, and upon which one or more coal mines were worked, and some houses erected for occupying tenants. Through various mesne conveyances this tract, omitting three or four forties not in actual occupation or in controversy, came into the possession of the defendant, and was claimed by it under color of title at least, some of the written muniments of title not being proved to have been attested or acknowledged.

How far color of title to the land, accompanied by actual occupancy of a part, will extend the occupant's possession constructively to the whole tract included in the deed is not definitely settled, and, we may add, is a subject full of difficulty. The general rule is, that where one enters upon a tract of land, with a deed or color of title to it, his actual occupation and improvement of a portion of it, will usually be construed as a possession of the whole, co-extensive with the boundaries described in the written instrument under which he claims title, if there be no antagonistic possession.—*Burk v. Mitchell*, 78 Ala. 61, and cases cited; *Farley v. Smith*, 39 Ala. 38. Particularly is this true where the person so entering makes a notorious claim to the whole by any acts suitably asserting his claim of ownership.—*Crowell v. Bebee*, 33 Amer. Dec. 172.

The authorities limit the application of this rule by the

further principle that where a vendor conveys two separate and distinct tracts of land, to only one of which he has title, an entry upon and occupation of that tract of which his title is good, will not, without more, operate as a disseizin of the owner of the other tract to which the vendor had no title. *Bailey v. Carleton*, 37 Amer. Dec. 190; *Stewart v. Harris*, 9 Hump. (Tenn.) 714. A sufficient reason for this, perhaps, is, that such actual possession of the occupant is perfectly consistent with the constructive possession of the real owner of the other tract which the law attaches to the true title, and does not, therefore, *per se*, disturb it. Nor is there any thing in one's occupation of his own land, to which he has title, which would impute notice to another that he claims an unreasonably extended possession constructively asserted under a paper title, which may be either unrecorded, or, if recorded, does not necessarily operate as notice to strangers. *Fenno v. Sayre*, 3 Ala. 458.

But such constructive possesion of the occupant may, of course, become adverse by acts of dominion or ownership properly asserted over the unoccupied tract, in the absence, we repeat, of any actual possession by the true owner. And it is evident that less notoriety and even less frequency of such acts of ownership will be required with possession under color of title than without it.—*Hodges v. Eddy*, 38 Vt. 327; Trial of Title to Land (Sedg. & Wait) 2d Ed. § 771. The use made of the land must be suited to its nature, adaptability and locality. In a recent case it was said that the cutting and removing timber from wild land, unfit for any other use, might amount to a possession, and, if accompanied by color of title, might constitute a disseizin.—*Childers v. Calloway*, 76 Ala. 128, 133; *Rivers v. Thompson*, 46 Ala. 335; *Burk v. Mitchell*, 78 Ala. 61. In another case it was held, where the occupant cleared, fenced and improved 200 acres of the tract consisting of 1500 acres, and paid taxes on the whole, cutting trees from the unenclosed part for fencing, firewood and timber, his actual possession of the part extended over the whole by color of title which he held to it.—*Munroe v. Merchant*, 28 N. Y. 1. The doctrine of adverse possession rests upon the presumed acquiescence of the party against whom it is held, and such acquiescence again presumes knowledge. All the law requires, therefore, is that the possession, or rather the acts of dominion by which it is sought to be proved, shall be of such a character as may be reasonably expected to inform the true owner of

[Woods v. Montevallo Coal & Transportation Co.]

the fact of possession and an adverse claim of title.—*Foulke v. Bond*, 41 N. J. (Law) 547; *Farley v. Smith*, 39 Ala. 44. It is sufficient if such owner has either knowledge or notice of such fact of possession and claim, which, as said by Baron Parke in *May v. Chapman*, 16 Mees. & Wels. 355, "mean not merely express notice, but knowledge, or the means of knowledge to which the party wilfully shuts his eyes."—*Wells v. Sheerer*, 78 Ala. 142.

The evidence shows that the lands in dispute were never occupied or used by any one for any purpose, except that plaintiff resided on them two or three years prior to the war, and the defendant cut a considerable amount of timber from them about two years prior to this suit. But after the bond for title was executed to the Alabama Coal Mining Company, about the year 1857, the plaintiff abandoned the actual occupancy of the lands, and the vendee company sold the house in which he lived to one Calvin Harris, who removed it from the land. The plaintiff remained in the neighborhood in the employment of the company, until about the year 1876 or 1877, when he removed from the State. Several intermediate conveyances, by deed, mortgage, and under decree of Chancery Court, were made at various times between the years 1860 and 1882, of the land above mentioned as conveyed to the Central Mining Company in April, 1863, or fractional interests therein—a tract, as we have said, of 1200 or 1400 acres, embracing the land in controversy, and other lands, some of which were in the actual possession of the grantors. The evidence thus tends to show that these dealings with the lands of the plaintiff, including the appropriation and sale of the house once occupied by him, were with his knowledge and acquiescence. Whether they would authorize a jury to find such an abandonment of the premises by the plaintiff and such a recognition of the constructive possession of the land by the defendant and those under whom it claims, as under color of title would amount to adverse possession sufficient in character and duration to bar this action under the statute of limitation of ten years, we do not decide, because the record raises no such question. But the charge given by the court decides, as matter of law, that if these facts are believed by the jury the action is barred. This withdrew the whole question of adverse possession from the consideration of the jury, which in this case, was error.

Nor does the evidence, in our opinion, raise any presumption, as matter of law, that the plaintiff ever executed a con-

[Ware v. Dewberry et al.]

veyance of the lands to the Alabama Coal Mining Company whatever may be the presumption from lapse of time as to his father's having made such conveyance. And it avails nothing in this action to infer a verbal authority on the part of the plaintiff for his father, Thomas Woods, to make such conveyance, as this would give but an equitable interest in the land to the vendee, and such · a title, apart from the operation of the statute of limitations, would obtain no recognition in a court of law.—*Standifer v. Swann*, 78 Ala. 88; *Hooper v. Columbus & Western Railway Co.*, 78 Ala. 213.

For the error in giving the charge requested by the defendant, the judgment is reversed and the cause remanded.

CLOPTON, J., not sitting.