# Henry *v.* Brown.

## *Action of Ejectment.*

1. *Ejectment; color of title; what constitutes.*—In an action of ejectment, in which the defendant claims color of title under an instrument which does not contain apt words of conveyance, and it appears from the instrument that it was the intention of the grantor to convey the legal title, such instrument may be used as color of title.

2. *Same; same; same.*—In order that a deed or paper writing may

[Henry v. Brown.]

give color of title, it is not necessary that the grantor should have had title either to the whole or any part of the land embraced in the instrument.

3. *Same; same; extent of actual or constructive possession under.* —Where a vendor conveys two separate and distinct tracts of land, to only one of which he has title, an entry upon and occupation of that tract, to which his title is good, will not, without more, operate as a disseisin of the owner of the other tract to which the vendor had no title.

4. *Same; same; charge to jury.*—In such case a charge is erroneous which instructs the jury to find for the defendant, "If the defendant moved on a part of the land described in the deed, under which color of title was claimed, and lived there and had possession openly and claimed to own the land therein described."

5. *Same; same; same.*—In such a case a charge is erroneous which instructs the jury that, if the defendant entered on the S. W. 1-4, S. 14, T. 3 S., R. 4 W., under a deed embracing the S. E. 1-4 of said section, and was in possession of any part of the land described in the deed, claiming to own all of it, his possession extended to all of the land embraced in the deed if such possession was exclusive, open, notorious, adverse and under claim of ownership.

6. *Same; same; misleading charge; not reversible error to give.*— The giving of a misleading charge is not reversible error, as the opposite party may protect himself against the misleading tendency by requesting an explanatory charge.

7. *Same; evidence; claim of ownership, declaration, as evidence of.* —Claim of ownership of one in possession of lands is an ingredient of adverse possession, and may be shown by the declarations of the party while in possession.

8. *Same; same; notoriety of, as evidence.*—Where proof of claim of ownership has been made, it is competent to prove notoriety of the claim as a means of proving knowledge of the claim by the true owner; and a question propounded a witness, whether the owner claimed the land openly and notoriously, is not subject to the objection that adverse possession cannot be shown by notoriety of the claim.

9. *Same; same; objection to evidence on one ground waiver of others.*—Where an objection is made to the admission of evidence, on one specified ground, such objection is a waiver of all others.

APPEAL from Circuit Court of Mobile.

Tried before the Hon. WM. S. ANDERSON.

Statutory action in the nature of an action of ejectment by the appellant against the appellee.

The appellee claimed title by adverse possession, under color of title, and offered in evidence on the trial the following instrument as color of title, and also to show the extent of his possession under claim of ownership:

"State of Alabama,"

"Mobile County."

"Know all men by these presents that we the undersigned heirs of the estate of Franklin Brown deceased hereby agree that Michael Morgan Brown and Alexander S. Brown have all of the South half of Section (14) T. 3 S. R. 4 W., and that Eliza K. Brown and Hagar Brown have the N. W. quarter of the S. W. quarter and the S. E. quarter of the S. W. quarter and W. half of S. E. quarter Section 23, T. 3 S. R. 4 W., as their entire interest in the real estate of said estate and that no other Dower or interest be allowed the wife or the above named heirs of the estate of Franklin Brown this being in accordance with the last will and testament of said Franklin Brown we hereby relinquish all interest in the above described lands."

her<br>
"Rosa (X) L. Howard."<br>
mark<br>
"Alice Howell."<br>
"Mary A. Howell."<br>
"Elizabeth Allen."<br>
"Isabella Whatley."<br>
"Susan A. Brown."

"State of Alabama,"

"Mobile County."

"I, W. P. Roberts, Justice of the Peace for said State and County hereby certify that Rosa L. Howell, Alice Howell, Mary A. Howell, Elizabeth Allen, Isabella What-

ley and Susan A. Brown whose names are signed to the foregoing instrument and who are known to me, acknowledged before me on this day, that, being informed of the contents of the instrument they executed the same voluntarily on the day the same bears date."

"Given under my hand this the 26th day of July, 1888."

"W. P. Roberts, J. P. M. C."

On the back appears the following:

"Heirs of Franklin Brown, Decd."
    "Partition Deed."

"State of Alabama,"
    "Mobile County."
"Probate Court."
    "July 30, 1888, filed in office this day and duly recorded in Deed Book No. 57 N. S. pages 277 and 278."

"P. Williams, Jr.,"

"Judge of Probate."

The plaintiff objected to the introduction of said paper in evidence, the court overruled the objection, and the plaintiff excepted.

The other facts of the case, necessary to an understanding of the decision, are set forth in the opinion.

Upon the introduction of all the evidence, the plaintiff requested the court to give the following written charges to the jury, which the court refused to give and the plaintiff excepted:

1. "The court charges the jury if they believe the evidence they must find for the plaintiff." 3. "The court charges the jury that in this case the defendant must show such acts of possession of the land sued for as ousted the plaintiff of her constructive possession, and if he has not shown such acts of possession they must find for the plaintiff."

The court gave the following written charges to the jury at the request of the defendant, to the giving of which the plaintiff excepted: 1. "The court charges the jury that if defendant Michael M. Brown moved on a

29s

part of the land described in the deed offered in evidence in 1889, and lived there and had possession openly, and claimed to own the land described in said deed then you should find for the defendant." 2. "The court charges the jury that it is only necessary for the jury to be reasonably satisfied from the evidence that Brown went into possession under a color of title and had possession of the lands for 10 years and that his possession was open and notorious and continuous for ten years to find for the defendant." 3. "The court charges the jury that if they believe from the evidence that the defendant entered on the S. W. quarter Sec. 14, T. 3 S. R. 4 W. under a deed embracing the S. E. quarter of said section and if the defendant was in the actual possession of any part of the land described in said deed claiming to own all of said land then defendant's actual possession extended to all of the land embraced in the deed provided said possession was exclusive, open, notorious, adverse and under claim of ownership."

There were verdict and judgment for the defendant and plaintiff appeals.

ERVIN & MCALEER, for appellant.—There are no operative words of conveyance in the instrument offered by defendant to constitute color of title, and same was not admissible in evidence.—*Webb v. Mullins,* 78 Ala. 113; *Power v. Kitching,* 88 Am. St. Rep. 628; *Goodson v. Brothers,* 111 Ala. 596; s. c., 88 Am. St. Rep. 708. The proof, showing that the plaintiff had the record title, and the acts of possession in evidence not being sufficient to pass title to defendant, the general charge should have been given for plaintiff.—*Robertson v. Allison,* 124 Ala. 392. Charge 3 asked by plaintiff should have been given. Charges 1 and 2 asked by defendant were erroneous. —*Wood v. Montevallo Coal Co.,* 84 Ala. 565; *Bailey v. Carlcton,* 37 Am. Dec. 190; *Stewart v. Harris,* 9 Hump. 714; *Penne v. Sayre,* 3 Ala. 458.

No brief for appellee came to the hands of the reporter.

DENSON, J.—Statutory ejectment by Mary Henry against Michael Brown to recover the southeast fourth

of section 14, in township 3 south, of range 4 west, situated in Mobile county.

Plaintiff's title consisted of a patent from the United States to the State of Alabama issued on the 5th day of March, 1870, embracing the lands in controversy as swamp and overflowed lands, a patent from the State of Alabama to Thomas Henry issued on the 2nd day of January, 1872, embracing the lands in controversy, and a certified copy of the will of Thomas Henry deceased, which showed that he devised all of his real estate to the plaintiff and that the will was admitted to probate on the 27th day of February, 1886.

The defense was adverse possession under color of title, for the period required by the statute to bar the action.

The defendant was shown to be a son and heir of Franklin Brown, deceased.

There was evidence on the trial tending to show that W. P. Allen and Nathan Allen had each been in possession of a part of the *locus in quo* prior to the time that it was claimed that Franklin Brown held the possession, but the evidence undisputably showed, that Franklin Brown never claimed in succession to the possession held by the Allens—that there was no privity of estate between the Allens and Franklin Brown. Hence, it is unnecessary to discuss the character of the possession held by the Allens of the lands sued for.

W. P. Allen entered the southwest quarter of section 14 as a homestead; this quarter section entered by Allen adjoined the quarter section sued for on the west. W. P. Allen sold the south-west quarter of 14 to his brother, Nathan Allen. There was 12 or 15 acres of cleared land under fence on the west half of the quarter section in controversy, a dwellinghouse was located on this cleared land and Nathan Allen lived in the house and cultivated the cleared lands. In 1875 or 1876, Nathan Allen sold to Franklin Brown the southwest quarter of section 14, together with the improvements on the quarter section in controversy, and, not having received a deed from W. P. Allen to the southwest quarter, Nathan Allen had W. P. to make the deed conveying title to the southwest quarter direct to Franklin Brown. When the sale was

made by Nathan Allen to Brown, Nathan moved off the lands.

Nathan Allen testified, as a witness for the defendant, that Franklin Brown, very soon after purchasing the improvements, moved the house off the land sued for; that Brown came into possession of the lands sued for "by making a trade somewhere" but he could not say "just when" Brown took possession of the lands; that Brown cut logs on the lands in controversy and cultivated the 12 or 15 acres that witness had farmed on; that he did not know how long Brown farmed there, but he finally quit and used the other place. This witness' evidence further tended to show that Franklin Brown continued to cut the timber on the lands in controversy, until he had cut all there was on them, but the witness said he could not tell how long Brown was occupied in cutting the timber.

Howard, a witness for defendant, testified that Nathan Allen turned the land in controversy over to him (witness); that he bought it from Allen "or gave him something for it;" that witness "dropped" it and had nothing more to do with it. This witness further testified as follows; "I think Mr. Brown bought it after that; he claimed it, he told me so. He was in possession of it." This witness' evidence further tended to show that 24 years before the trial he (witness) cut a few logs and hauled them off of the land for Franklin Brown, and that Franklin Brown claimed the land until he died. The witness further testified that he had lived within a half mile of the land since 1875; that he knew of no other acts of ownership that were exercised over the lands by Franklin Brown, except the cutting of the timber on it and hauling it off, and that he could not say as to this, except once, and that was about nine years before Franklin Brown's death. He died in June, 1888.

So it would seem, that the only acts of ownership that were exercised over the lands in controversy by Franklin Brown were the cultivation of the 12 or 15 acres that were cleared, and cutting and removing the timber from it. Under the evidence, the removal of the improvements from the land cannot be considered as the assertion of an act of ownership of the land. With the exception of

the 12 or 15 acres that were cleared, the lands were wild lands, and the proof showed without conflict that Franklin Brown abandoned the cultivation of the land.

Franklin Brown's possession must be gauged by the doctrine of actual possession—*possessio pedis,*—for, giving to the evidence the most favorable interpretation that can be put upon it for the defendant, the entry made upon the land by Franklin Brown was under a naked claim: there was no pretense that he held under a conveyance or color of title.

An indispensable element of adverse possession is that the possession must be continuous. "Moreover, the continuity of the adverse possession is the very essence of the doctrine and policy of the statutes of limitation." The doctrine of continuity rests upon the principle that, "Whenever a party quits the possession the seisin of the true owner is restored, and a subsequent wrongful entry constitutes a new disseisin."—*Farley v. Smith,* 39 Ala. 38. So, if it should be granted that acts of ownership were exercised over the lands by Franklin Brown and that they were of such character as to constitute *indicia* of an adverse holding, were they continued in such way as to make Franklin Brown an adverse holder of the land?

The evidence, as we have seen, showed that the cultivation of the land, 12 or 15 acres, was but for a short time at most, and that Franklin Brown abandoned the cultivation. The testimony showed that he cut the timber on the land, but it showed, without conflict, that the last act of cutting of the timber was nine years prior to his death, which event occurred in June, 1888; this would make the date of the last cutting of timber 1879; it would seem, that Franklin Brown at the time of his death was not an adverse holder of the land, and the defendant, Michael Brown, must depend upon his own possession of the land to defeat the suit.

The defendant claimed to be an adverse holder under color of title: under the evidence, whatever possession of the lands his mother held inured to his benefit.

At the date of his death Franklin Brown, as was shown by the evidence, owned a part of section 23, in the same township and range in which the lands sued

for were located, and also the southwest fourth of section 14, it being the quarter section adjoining the lands sued for on the west. His residence was on the tract he owned in 23, and he died there June, 1888.

The defendant testified that, shortly after his father's death, his mother, his brother (Alexander S. Brown), and himself moved on the south half of section 14. At that time defendant was 11 or 12 years old. After showing that the parties who signed it, and those whose names were mentioned in it, were the heirs of Franklin Brown, deceased, defendant offered in evidence, for the purpose (as the bill of exceptions states) of showing color of title and the extent of defendant's possession under claim of ownership, a certain paper writing which is set out in full in the bill of exceptions. It was admitted against the objection of plaintiff.

What constitutes color of title has been a subject of discussion in the courts of all the States, and frequently by our own Court. In the case of *Saltmarsh v. Crommelin*, 24 Ala., on page 352, this Court, speaking upon the subject, said it was that apparent right in the tenant, which he has derived by his paper title, which distinguishes him from the naked trespasser or intruder. He who holds under a paper title, therefore, which apparently gives him a right to the land, which would lead an honest mind to the conclusion that the right passed by the deed.

In *Goodson v. Brothers*, 111 Ala. on page 596, the Court said; "A claim or color of title may be shown by any paper purporting to convey the land or the right to its possession into the party asserting adverse possession, however, and for whatever reason, such paper might be lacking in the essentials of a muniment of title, provided the party claims under it in good faith."

In *Black v. Tenn. Coal & Railroad Company*, 93 Ala. on page 113, the Court said; "Color of title is that which in appearance is title, but which in reality is no title. What constitutes color of title is a question of law for the court, while occupancy and acts of ownership are for the jury."

In *Cooper v. Watson*, 73 Ala. 254, the Court said; "However insufficient may be a conveyance to pass title,

and however incomplete may be the power of the grantor in such conveyances to pass the true and real title, yet an entry under it accompanied with continuous possession and claim of title renders the possession adverse."

In *Colin Cameron v. United States,* 148 U. S. (L. Co. P. ed.) p. 462, the Supreme Court of the United States said, "Color of title exists wherever there is a reasonable doubt regarding the validity of an apparent title, whether such doubt arises from the circumstances under which the land is held, the identity of the land conveyed, or the construction of the instrument under which the party in possession claims his title."

In the case of *McQueen v. Ivey,* 36 Ala. 308, it was held that, when a vendee has paid the purchase money, a bond for title held by him from the vendor would constitute color of title. To the same effect was the ruling in the case of *Farley v. Smith,* 39 Ala. 38; *Beard v. Bryan,* 78 Ala. 37; *Woods v. Montevallo Co.,* 84 Ala. 560.

It has been held by the Supreme Court of Georgia that an agreement in writing, between tenants in common for r division of their lands, would constitute color of title. —*Shields v. Lamar,* 58 Ga. 590.

From an inspection of the instrument offered in evidence in this case, we think it was executed manifestly for the purpose of divesting whatever title the parties who signed it had in the lands described therein out of them and vesting it in the grantees of the instrument. It may not contain apt words of conveyance, technically speaking, but apt words of conveyance are not necessary in a deed.—Code, § 983. If it appears from an instrument that it was the intention of the grantor to transfer the legal title to the grantee, the instrument under the statute will be operative for that purpose.—*Ward v. Ward,* 108 Ala. 278; *Sharpe & Son v. Brantley,* 123 Ala. 105.

We are of the opinion that, so far as the form of the instrument offered in evidence is concerned, it could be used as color of title.

It was urged, as an objection to the instrument, that the parties who signed it never had possession of the land and that it was not shown that Franklin Brown ever held the possession. In order that a deed or paper wri-

ting may give color of title it is not necessary that the grantor should have had the title, either to the whole of the land, or to any part of it embraced in the instrument. —*Ryan v. Kilpatrick,* 66 Ala. 332; *Riggs v. Fuller,* 56 Ala. 141; *Cooper v. Watson,* 73 Ala. 254; *Ludd v. Dubraca,* 61 Ala. 25; *Woods v. Montevallo Co., supra;* 1 Cyc. p. 1019, j. notes 7 and 8.

A further contention of the plaintiff was that the paper could only operate as color of title to the S. W. quarter. The proposition involved in this contention is that, where a party or vendor conveys two separate and distinct tracts of land, to only one of which he has title, an entry upon and occupation of that tract to which his title is good, will not, without more, operate as a disseisin of the owner of the other tract, to which the vendor had no title. The proposition finds support in the case of *Woods v. Montevallo Coal Co.,* 84 Ala. 560, and Judge SOMMERVILLE, speaking for the Court in that case with respect to this proposition treated it as a limitation upon the general rule that where one enters under color of title upon a tract of land his occupancy and improvement of a portion of it will be extended to the boundaries described in the deed. The learned judge said; "A sufficient reason for this, perhaps, is that such actual possession of the occupant is perfectly consistent with the constructive possession of the real owner of the other tract which the law attaches to the true title, and does not, therefore, *per se* disturb it. Nor is there anything in one's occupation of his own land, to which he has title, which would impute notice to another that he claims an unreasonably extended possession constructively asserted under a paper title, which may be either unrecorded, or, if recorded, does not necessarily operate as notice to strangers."—*Bailey v. Carlton,* 37 Am. Dec. 190; *Stewart v. Harris,* Hump. (Tenn.) 714; *Turner v. Stephenson,* 2 L. R. A. 277; *White v. Burnly,* 20 How. (L. C. P. Co. ed., Book 15) 886; 1 Cyc., p. 1130 c., note 63; 3 Wash. on Real Property (4th ed.), marginal page 498.

In the case of *Turner v. Stephenson, supra,* the land in controversy was described as the S. half of the northeast quarter of section 4, T. 25 N., of R. 11, W. It was granted to the State of Michigan in 1850 by the United States,

and the State in 1872 issued a patent under which, by *mesne* conveyances, the plaintiff, Turner, claimed title. The defendant, Stephenson, subsequent to the patent to the State, under the Homestead Law, located 160 acres, described in his patent as the N. E. quarter of section 4, same township and range as the State patent to Turner. Thus the 160 acres located by Stephenson as a homestead included the 80 acres claimed by Turner and conveyed to his grantors by the State. It was conceded that Turner had the title of record to the 80 acres in controversy, and that he was entitled to recover unless defendant showed adverse possession. Defendant, Stephenson, entered and made his improvements on the northwest forty, and his contention was that his *possessio pedis* of that forty was extended by his patent to the 160 acres by construction. The Court said, "The mere occupancy of the northwest forty acres, with no dominion exerted over the south eighty, save what might be inferred from his deed, would not be sufficient to gain possession by adverse possession. In such case there could be no notice, actual or constructive, to Turner, who holds the legal title, of any claim on the part of the defendant to the unoccupied 80. Turner might well suppose that Stephenson was only claiming title to the land actually occupied by him, or within the bounds of the smallest governmental subdivision. There would exist no circumstances or reason why Turner would be put on inquiry to ascertain whether his neighbors, living on and cultivating other parcels than his own, were claiming title to his lands."

We are of the opinion that the defendant's case falls within the limitation above discussed, and, of consequence, that entry and occupancy of the S. W. quarter would not extend the defendant's possession under color of title, constructively to the S. E. quarter of the section, but to accomplish this it was necessary to show that acts of ownership or dominion were properly asserted over at least some part of the S. E. quarter of the section. But, as was said in the case of *Woods v. Montevallo Coal Co., supra,* "It is evident that less notoriety and even less frequency of such acts of ownership will be required with possession under color of title, than without it."

[Henry v. Brown.]

We deem it unnecessary to prolong this opinion by a discussion of the constituent elements of adverse possession under color of title; they have been frequently declared and clearly defined by the court. —*Wood v. Montevallo Coal Co., supra; Smith v. Keyser,* 115 Ala. 455; *Burke v. Mitchell,* 78 Ala. 61; *Goodson v. Brothers, supra; Black v. Tenn. Coal Co.,* 93 Ala. 113; *Norment v. Eureka Co.,* 98 Ala. 182.

Under the principles we have announced, charge 3, refused to the plaintiff, asserted a correct proposition of law and should have been given.

Charges 1 and 3, given for the defendant, are in conflict with the view we have taken of the case and should have been refused.

On its face charge number 2, given for the defendant, refers to the lands sued for. If it is subject to the criticism that it is misleading, this would not render the giving of it by the court reversible error. The plaintiff could have protected herself against the misleading tendency by requesting an explanatory charge.

As the case must be reversed on account of the errors pointed out, and we cannot know what the evidence may be on another trial of the case, we deem it unnecessary to determine whether or not the refusal of the court to give the affirmative charge requested by the plaintiff was error.

Claim of ownership of one in possession of lands is an ingredient of adverse possession and it may be shown by the declarations of the party while in possession.— *Eagle & Phoenix Co. v. Gibson,* 84 Ala. 208; *Woods v. Montevallo Coal Co., supra; Dorlan v. Westervitch,* 37 So. Rep. 382.

The question asked the witness Nathan Allen, to-wit: "Do you know whether he claimed the property openly and notoriously?", called for a conclusion of the witness, and, if it had been objected to on this ground, doubtless the court would have held the objection good. The only objection offered to the question was that adverse possession could not be shown by proving the notoriety of the claim. It is true notoriety of the claim of itself would not constitute adverse possession, but claim of ownership openly asserted as hostile to the true owner

is an indispensable ingredient of adverse possession and must be shown.—1 Brick. Dig. p. 49; *Potts v. Coleman,* 67 Ala. 22. It is also the law, that, where proof of claim of ownership has been made, it is competent to prove notoriety of the claim, simply as one means of proving knowledge of the claim by the true owner.—*Woods v. Montevallo Coal Co., supra; Price v. Mazange,* 31 Ala. 701. But it is never competent to prove ownership or title by reputation or general understanding.—*Goodson v. Brothers, supra,* and authorities there cited.

The plaintiff, having rested his objection on a specified ground, must be held to have waived all others. The objection made was inapt.—3 Mayfield's Dig. p. 575 § 2742 1-2, p. 576 § § 2759, 2761.

For the errors committed in refusing charge 3, requested by plaintiff, and in giving the charges 1 and 3, requested by the defendant, the judgment of the court must be reversed and the cause will be remanded.

Reversed and remanded.

MCCLELLAN, C. J., HARALSON and DOWDELL, J.J., concurring.