[Sharpe & Son v. Brantley ]

# Sharpe & Son v. Brantley.

*Action of Ejectment.*

| 123 | 105 |
|-----|-----|
| 132 | 150 |
| 123 | 105 |
| 135 | 310 |
| 123 | 105 |
| 143 | 455 |

1. *Ejectment; equitable title will not support action.*—An equitable title in the plaintiff will not support a statutory real action for the recovery of land.

2. *Same; same.*—In an action of ejectment, where the plaintiff claims the land sued for as the purchaser at an execution sale, but it is shown that the defendant in execution did not have the legal title to the lands sued for, but only a perfect equity, the plaintiff at the sale under the execution, purchasing only the defendant's claim to the property, did not acquire the legal title, and can not, therefore, maintain his action.

3. *Pleading; construction of written instrument.*—An instrument in writing executed by a mortgagor to the mortgagee, which recites that in consideration of all the indebtedness due from the mortgagor to the mortgagee "I hereby transfer my rights, titles and good will in two lots as described in the deed and mortgage held by [the mortgagee naming him] empowering him to hold or sell the same as he may think proper, without any notice," and which is duly signed and attested by a subscribing witness, is under the provisions of the statute, (Code, § 983), sufficient as a deed, and passes the legal title to the mortgagee named in such instrument; and the mortgage being satisfied by such deed is merged into and destroyed by it.

4. *Same; assignment of mortgage; when not sufficient to pass legal title.*—Where after a mortgage has been satisfied by and merged into a deed executed by the mortgagor to the mortgagee, conveying the mortgaged premises, an assignment endorsed upon said mortgage that for value received the mortgagee had "transferred, sold and assigned the within mortgage," which transfer is not attested or acknowledged, passes no title out of the mortgagee into the assignee, upon which a statutory real action can be maintained.

APPEAL from the Circuit Court of Marengo.

Tried before the Hon. J. J. BANKS.

This was a statutory action of ejectment, which was originally brought on June 12th, 1895, by the appellants, A. Y. Sharpe & Sons against Robert Hyman. Upon

motion of Ida Brantley, who was the landlord of Robert Hyman, she was made a party defendant to the suit. The defendants pleaded the general issue.

The evidence for the plaintiffs tended to show the following facts, upon which are based the plaintiffs' claim to the property sued for: The plaintiffs brought an attachment suit against Floyd Brantley, the husband of Ida Brantley, and a writ of attachment was levied upon a certain lot, No. 880, in the city of Demopolis. Upon the rendition of judgment in. favor of the plaintiffs in this attachment suit, the lot levied upon was, under an order of the court, sold, and at such sale the plaintiffs became the purchasers. This attachment was sued out on June 25th, 1892, and was placed in the hands of the sheriff and levied on said lot on the day of its issuance. The lot was sold under the order of the court, as just stated, on October 17, 1892. On February 25, 1886, Simeon Miller who was at that time owner of the lot, executed to William Morris a mortgage on lots 880 and 885 in the city of Demopolis. Subsequently on June 30, 1887, George J. Michael purchased said lots from William Morris, and received from him a deed which was intended to convey lots numbered 880 and 885; but in fact conveyed lots 885 and 886. At the time of the execution of said deed, William Morris assigned to Michael the mortgage from Simeon Miller, the written assignment endorsed thereon being as follows: "For value received I hereby transfer, sell and assign the within mortgage to George J. Michael."

George J. Michael, as a witness, testified that he bought the lots from William Morris for Floyd Brantley, the husband of Ida Brantley; that said Floyd Brantley had paid him all of the purchase price therefor, and also for the house which he, Michael, built on lot 880 for Floyd Brantley. The witness Michael further testified that he never claimed to have owned lot 886 and never sold it to Floyd Brantley; that he did sell lot 880 and put him in possession thereof; that he purchased from William Morris lots 880 and 885, and that in the execution of the deed by Morris, there was a mistake made in describing the lots as 885

and 886 instead of those purchased; that he did not discover the mistake until about the time the present plaintiffs brought the attachment suit against Floyd Brantley; that he never intended to purchase lot 886, but it was distinctly understood that he purchased the two lots numbered 880 and 885; and that upon discovering the mistake he executed on April 25, 1895, a deed to the plaintiffs for lot 880, which was one of the lots he sold Floyd Brantley.

The plaintiffs introduced further evidence tending to show that at the time of the levy of the attachment on lot 880 in the suit by the plaintiffs against Floyd Brantley, said Floyd Brantley was in possession of lot 880, claiming it as his own. The plaintiffs also introduced in evidence the deed from George J. Michael to them, conveying lot 880, which deed was dated April 25, 1895.

The defendants introduced in evidence an instrument in writing, executed by Simeon Miller to William Morris on December 9, 1886, and recorded on June 29th, 1892, which instrument was signed by Simeon Miller and witnessed by one A. L. Ars, and was in words and figures as follows: "Demopolis, Alabama. Dec. 9th, 1886. In consideration of the amount of seventy-four 85-100 ($74.85) due Wm. Morris, I hereby transfer my rights, titles and good will in 2 lots as described in a deed and mortgage held by Wm. Morris empowering him to hold or sell same as he may think proper without any notice. Witness my hand and seal this the 9th day of Dec., 1886." The defendants then proved that the deed and mortgage mentioned in said instrument as introduced in evidence, was the mortgage executed by Simeon Miller to William Morris conveying to the latter lots 880 and 885, and which was delivered by Morris to Michael at the time Michael testified he bought said lots from Morris; that the $74.85 mentioned in said instrument executed to Morris by Miller, on December 9, 1886, was the amount then due on the mortgage indebtedness, together with all the other indebtedness due by said Miller to Morris; and that on the execution of said instrument, said Morris ntered upon and held possession of the two lots 880 and 885 until he executed the conveyance to George J. Michael.

[Sharpe & Son v. Brantley.]

The defendants then introduced in evidence a deed from William Morris to George J. Michael—the one referred to in the plaintiffs' testimony—which was dated June 30, 1887, and conveying to Michael the lots 885 and 886, and also the deed from said Michael to Floyd Brantley, dated May 3, 1890, conveying said lots 885 and 886 to said Brantley. The defendants then introduced in evidence a quit claim deed executed by William Morris to Ida Brantley, conveying to her the lot 880, the property sued for in this action, which deed was dated June 28th, 1892, and was recorded the day following. The defendant, Ida Brantley and her husband, Floyd Brantley each testified that Michael purchased the lots 880 and 885 from Morris for the defendant Ida Brantley; that she paid a part of the purchase price with the money which was earned by her own labor, her husband paying the balance; that it was distinctly understood at the time of the purchase and at the time of the erection of the house, that her husband was purchasing the lots, and building the house, for Ida Brantley, and she went immediately into the possession of said lot and was in possession of lot 880, occupying it as her homestead at the time of the levy of the attachment sued out by the plaintiffs against Floyd Brantley.

Upon the introduction of all the evidence, the court at the request of the defendants gave to the jury the following written charge: "If the jury believe the evidence, they must find for the defendants." The plaintiffs duly excepted to the giving of this charge, and also excepted to the court's refusal to give the general affirmative charge requested by them.

There were verdict and judgment for the defendants. The plaintiffs appeal, and assign as error the giving of the general affirmative charge requested by the defendants, and the refusal to give the general affirmative charge requested by the plaintiffs.

TAYLOR & ELMORE, for appellant.—To recover in ejectment against the execution debtor, the purchaser at execution sale need only prove possession of execution or judgment debtor by himself or tenant at the time of levy

and commencement of suit.—3 Brick. Dig., 325, § § 41, 42, 43; *Hendon v. White*, 52 Ala. 597. The sale by the sheriff to plaintiff conveys the title of the defendant in execution in possession. This title is sufficient for a judgment for plaintiff, and proof of possession by execution debtor, or his tenant, entitles plaintiff to judgment for possession.

CLARKE & WILLIAMS, *contra.*—Plaintiff in ejectment must recover on the strength of his own title.—*Stephens v. Moore*, 116 Ala. 397. Under the evidence in this case, the plaintiff owned only the equitable title which would not support an action of ejectment.—*Stanley v. Johnson*, 113 Ala. 344.

The instrument executed by Miller to Morris was a deed conferring title to Morris.—Code, § 983; *Webb v. Mullins*, 78 Ala. 111.

McCLELLAN, C. J.—Brantley, the defendant in the execution under which plaintiffs purchased, did not have the legal title to the land sued for but only a perfect equity, and plaintiffs, therefore, did not acquire the legal title by that purchase, but only an equitable title which will not support this statutory real action for the recovery of the land.

The action not being against the defendant in said execution, there is manifestly no room in the case for the doctrine contended for by appellants, that where "the defendant in the judgment is the tenant in possession, against whom the action is commenced, the possession is *prima facie* sufficient evidence" of title in the purchaser at execution sale.

We construe the paper writing of December 9, 1886, executed by Miller to Morris, and witnessed by Ars, to be a deed.—Code, § 983; *Ward v. Ward*, 108 Ala. 278.

As a matter of fact this deed, under the circumstances of its execution, as shown by uncontroverted evidence, was a satisfaction of the mortgage from Miller to Morris to which it refers; and as matter of law the mortgage was merged into and destroyed by the deed. It follows that the subsequent transfer of this defunct mortgage by Morris to Michael—the words of the transfer not be-

[Craft, Admr. v. Cowart *et al.*]

ing in themselves sufficient to carry title nor capable of being construed into a conveyance of title, and the transfer not being attested or acknowledged—passed no title out of Morris and into Michael; and hence plaintiffs take nothing—at least not the legal title essential in this action—from or through Michael: He never had the legal title and, of course, could not pass it into the plaintiffs.

Plaintiffs, therefore, failed to make out their case, they failed to show title to support their action; and the trial court properly gave the affirmative charge for the defendant.

Affirmed.