# Rucker *v.* Jackson, *et al.*

### Bill to Quiet Title.

(Decided November 28, 1912. 60 South. 139.)

1. *Quieting Title; Title Acquired After Bill Filed.*—The fact that a defendant could not make a sufficient showing of title because not able to trace title from a patentee to one of his earlier grantors, and hence procured a deed from the sole heir of such patentee after the filing of the bill, but before filing his answer is no sufficient reason why he may not prevail in equity on proof of a title valid in other respects.

2. *Same.*—The statute governing proceedings to quiet title contemplates that the answer shall state the title relied on by defendant, from whatever source or at whatever time acquired; hence a title acquired by a defendant after the filing of a bill to quiet title, but before he files answer should be stated in his answer.

3. *Same; Burden of Proof.*—In an action for quieting title where neither party has actual possession and the issue is as to the title, the burden is on the complainant of proving title.

4. *Same; Evidence.*—The evidence considered and held insufficient to show a deed to complainant's husband from a grantee of the patentee.

5. *Same; Defendant's Title.*—Where a defendant in a bill to quiet title established title to the minerals upon and under the lands in suit the decree should so declare.

6. *Equity; Matters Occurring After Bill Filed.*—It is a general rule of· equity practice that matters occurring after the filing of the bill which are proper for consideration, may be stated in the ·answer.

7. *Evidence; Celibacy; Presumption of Continuance.*—As the condition of celibacy is the natural and only one possible during early life, and as there is no period at which it necessarily terminates by marriage, the presumption is that celibacy existing during early life continues.

8. *Same; Best and Secondary.*—Before secondary evidence of the contents of a deed can be considered it is essential that the fact be established that such an instrument had once existed.

9. *Descent and Distribution; Next of Kin; Grandparents.*—Under section 3754, Code 1907, grandparents take before uncles and aunts.

10. *Adverse Possession; Actual; Woodland.*—The fact that prior to 1882, at which time defendant took a deed, complainant's husband consented to the cutting of two trees on wild woodland, and at another time to the cutting of dead trees for firewood, and at another time, while on the land, he offered to sell it to a stranger, although indicating an intention to claim title and assert dominion, cannot be regarded as anything more than acts of trespass, not making title by adverse possession within the statute of limitations.

11. *Same; Claim of Ownership; Continuous Possession.*—A claim of ownership or an intention to assert title against the true owner is of no consequence, in the absence of demonstrations by acts done upon the property leaving there indicia of continued possession.

12. *Same; Assertion of Ownership; Necessity.*—So long as there is no adverse holding the true owner owes no one the duty of a visible or audible declaration of ownership, and no adverse presumptions can be drawn from his inactivity.

APPEAL from Walker Law and Equity Court.

Heard before Hon. THOMAS L. SOWELL.

Bill by Ellen Jackson and others against E. W. Rucker, to quiet title as to lands. Decree for com-

[Rucker v. Jackson, et al.]

painants and respondent appeals. Reversed and rendered.

GEORGE L. SMITH, for appellant. Grandparents inherit to the exclusion of uncles and aunts.—*Phillips v. Petite*, 35 Ala. 696; *Cox v. Clark*, 93 Ala. 404; 14 Cyc. 48. Ellen Jackson was not shown to have been married and the presumption is that she continued in a state of celibacy.—14 Atl. 600; 3 Mo. App. 336; 22 A. & E. Enc'y of Law, 1285. The presumption is also that she died without issue.—82 N. E. 75; 22 A. & E. Enc'y of Law, 1291; *Knight v. Hunter*, 155 Ala. 238. Notoriety of ownership may be proven.—*Anniston City Land Co. v. Edmundson*, 145 Ala. 557; *Owen v. Moxon*, 167 Ala. 615; *Tenn. Co. v. Lynn*, 123 Ala. 112. Long's holding was that of the appellant and as his tenant at sufferance.—*Black W. C. Co. v. West*, 170 Ala. 346. A possession may be sufficient to contest the possession of one filing a bill to quiet title and yet not be of such character as to ripen into adverse possession.—*Laird v. Powell*, 144 Ala. 408; *Crabtree v. Ala. State Land Co.*, 156 Ala. 513. The failure to return land for taxation is a relevant circumstance to rebut claim of ownership. —*Driver v. King*, 145 Ala. 585. No constructive possession in the lands is shown in complainant.—*Stiff v. Cobb*, 126 Ala. 31; *Hoyle v. Manning*, 144 Ala. 515. Under the evidence in this case the complainants have not shown the elements necessary to constitute adverse possession.—*M. & E. R. R. Co. v. Rutland*, 165 Ala. 311; *Chastang v. Chastang*, 141 Ala. 451; *Lawrence v. Ala. State Land Co.*, 144 Ala. 524; *McCrary v. Jackson Lbr. Co.*, 148 Ala. 247; *Thompson v. Logan*, 166 Ala. 45; *Rivers v. Thompson*, 46 Ala. 235; *Sou. Ry. Co. v. Hall*, 145 Ala. 224; 107 N. W. 247; 136 S. W., (*Sou. I. & C. Co. v. Schwoon*); 112 Pac. 709 and authorities next

above. No color of title is shown in complainant.— *Crowder v. Tenn. Co.,* 162 Ala. 159; *Bush v. Thomas,* 162 Ala. 168; *Bailey v. Blackshear Co.,* 142 Ala. 257; *Zimmern Mfg. Co. v. Dunn,* 163 Ala. 262, see also 93 Ala. 111; 90 Ala. 383; 108 Ala. 635; 148 Ala. 228; 142 Ala. 698; 69 Ala. 140. There was no actual possession of the land at the time the deed from Martha Douglass was executed and it was not avoided therefore on that ground.—*Croft v. Thornton,* 125 Ala. 391; *Burnstein v. Humes,* 71 Ala. 60; *Sharp v. Robertson,* 76 Ala. 243. Title acquired after the filing of the bill was properly set up in the answer and became a matter of defense.— *Hughes v. Rose,* 163 Ala. 268; *Lindsey v. Barnett,* 130 Ala. 417; *Etowah Co. v. Carlisle,* 127 Ala. 663; 1 Daniels Chan. Pr., section 17; 6 Atl., 21. What ever title was shown in the respondent should have been so decreed.—*Collier v. Alexander,* 138 Ala. 245; *Sloss Co. v. Loller,* 170 Ala. 239. Where there is no actual possession possession is referred to title.—*Laird v. Powell, supra.*

M. B. McCollum, for appellee. Peaceable possession is all that is necessary to maintain the bill.—*Newell v. Manley,* 55 South. 495; *Brand v. U. S. Car Co.,* 128 Ala. 579; *Smith v. Gordon,* 136 Ala. 495. Possession once shown is presumed to have continued until rebutted by competent evidence.—90 Ala. 474. Appellants were in constructive possession.—*Sheridan v. Schrift,* 120 Ala. 479; 60 Ala. 226. Sufficient possession was shown.— Authorities supra. After acquired title of defendant could not be shown.—*Pearson v. King,* 99 Ala. 125; *Davis v. Curry,* 85 Ala. 133. No affirmative relief can be granted without prayer therefor.—*Cheney v. Nathan,* 110 Ala. 252.

[Rucker v. Jackson, et al.]

SAYRE, J.—Appellees filed the bill in this case under the statute to settle land titles. They describe themselves as the widow, children, and heirs at law of Jonathan Jackson, deceased, under whom they claim, and so they are. Jonathan Jackson was a brother of David Jackson, who had got a patent to the land in question from the government of the United States in 1860. Defendant in his answer claimed only the minerals upon and under the land by virtue of a deed from P. M. Long, who had a deed from Martha Douglas, both executed in the interval between the filings, respectively, of the bill and answer, and showed that she was the sole heir at law of David, the patentee; her title being correctly traced by the proof through a number of devolutions which will be stated. For the purpose, perhaps, of showing that his claim of title, as stated in his answer, was no mere afterthought, and so to avoid any discrediting conception of his case that might arise from his acquisition of title pending the suit, defendant in his proof showed that he had claimed the land for more than twenty years under a deed from B. M. Long and others, by the tax books that he had paid taxes since 1890—the tax records for previous years had been destroyed by fire—and that for a time within the period of his asserted ownership his licensee had cut timber for cross-ties from the land.

He recognized the fact, however, that this was an insufficient showing of title, because he was unable to trace by competent evidence title from David Jackson into his grantors of an earlier time, and so procured and relied in defense upon the title stated in his answer. He might have defeated an action of ejectment on a good title so acquired (*Etowah Mining Co. v. Carlisle*, 127 Ala. 663, 29 South. 7), and the fact that his acquisition of title had been so timed affords no sufficient

reason why he should not be allowed to prevail in the form of equity on proof of a title valid in every other respect.

It was also not only proper but necessary, that the title so acquired and relied upon should be stated in the answer. The nature and purpose of the proceeding is such as to require an adjudication of the rights and claims of the parties at the time of the rendition of the decree. Not only is it the general rule of equity practice that matters proper for consideration which have occurred since the filing of the bill may be stated in the answer, but the statute governing the procedure of such causes contemplates that the answer shall contain a statement of the title relied upon by the defendant from whatsoever source or at whatsoever time acquired.

The statute authorizes a bill like this to be filed by any person in the peaceable possession of lands, whether actual or constructive, claiming to own the same. Where neither party has actual possession, necessarily the issue becomes one of title, drawing to it constructive possession, and with the burden upon complainant to show title in order to maintain his bill, and this rule applies in this case, for, when the bill was filed, no one was in possession of the land. Nor has there ever been any such actual possession as would affect the title. The witnesses with one accord say that the property has never been occupied, cultivated, or improved; that it is and has been a wild woodland.

It appears in the testimony of several witnesses, some of the complainants and their relatives, that prior to 1882, at which time Rucker, the defendant, took his deed from B. M. Long and others, one of them cut two trees for rails by permission of Jonathan Jackson, another some dead trees for firewood, that while upon the land on one occasion Jonathan offered to sell the land

to another, a stranger to the family, and in the most general and indefinite way conceivable they say that he claimed to own it. There is nothing approximating or even remotely approaching competent and satisfactory evidence of any continuous adverse holding by any one of any part of this land. The rare and widely separated acts to which we have referred, no matter how clearly they may have indicated a purpose to claim title and assert dominion over the property, do not satisfy the law of title by adverse possession and the statute of limitation. They cannot be regarded as anything more than acts of trespass.

Nor is the claim of ownership or the intention to assert title against the true owner of any consequence in the absence of demonstration by acts done upon the property leaving there indicia of a continued possession.—*Hoyle v. Mann,* 144 Ala. 516, 41 South. 835. The acts and declarations shown in evidence were wholly ineffectual to divest title or to affect the validity of a conveyance by the true owner. There is, therefore, no occasion for consideration of the doctrine of pedis possessio and color of title to which appellees have referred in connection with a deed under which they claim, the status and effect of which as a muniment of title will be stated presently.

Appellees offered in evidence an instrument purporting to be a deed of this land from Samuel Jackson to Jonathan, executed in due form and dated in November, 1864. This instrument of itself conveyed no title at the time, nor does it constitute any sufficient evidence of their present ownership. Samuel Jackson was the father of David and Jonathan. David died or was killed while serving as a soldier in the war between the states, and his widow died soon after him. But they left one child, a daughter, who lived until about 1903,

having survived Samuel Jackson some seven or eight years. Martha Douglas, from whom P. M. Long procured his deed in 1907, pending this suit, was her maternal grandmother and sole heir.

Grandparents take under the statute of descents before uncles or aunts.—Code, § 3754; *Cox v. Clark,* 93 Ala. 400, 9 South. 457; *Phillips v. Peteet,* 35 Ala. 696. The witnesses do not in terms deny that Ella Jackson, David's daughter, left descendants, nor, on the other hand, do they affirm that she did. They were not interrogated on that point.

But as the single state is the natural and only possible one during early life, and there is no period at which it is necessarily terminated or merged into marriage, the presumption, in the absence of evidence to the contrary, is that the celibacy which existed during early life continues.—22 Am. & Eng. Encyc. 1285. Besides, this daughter was feeble minded, and the witnesses in referring to her constantly use her maiden name. No conveyance from David Jackson having been shown, the title was in his daughter at the time of Samuel's deed to Jonathan, and upon her death descended to her grandmother, Martha Douglas, from whom, as we have seen, it passed to appellant.

At last, then, appellees' case depends upon a finding in accordance with their insistence that, though no deed has been shown, there was, as appellees say in their brief, a "sale by David Jackson to Samuel Jackson, in 1864, or at least before he went off to the war." Absolutely nothing is shown in respect to the situation of the parties at that time to make the execution of such a deed probable. The contention that there was a deed rests entirely upon the testimony of Elizabeth Jackson, a daughter-in-law of Samuel Jackson, delivered about 50 years after the supposed event and the death of

David Jackson, that she had heard David say that he had sold the place, and the fact that Samuel had undertaken to convey, that Jonathan had claimed to own, while nothing had been done by Ella Jackson or her grandmother Douglas, prior to the grandmother's deed to P. M. Long, to indicate a claim of title on their part. Pretermitting consideration of countervailing testimony offered by appellant to the effect that Jonathan, about the time of his deed to B. M. Long and others, had conceded the invalidity of his own title, and of that evidence similar in character and equally persuasive, which went to show that, if Jonathan had any title by virtue of his deed from Samuel Jackson, he had conveyed the same to B. M. Long and others, thus parting with the title upon which appellees rely in order to discharge the burden of proof resting upon them, this contention of the appellees must be disposed of by reference to the incompetency and inadequacy of the evidence offered in its support.

So long as there was no adverse holding, the true owner owed no one the duty of a visible or audible assertion of ownership, nor should any unfavorable inference be drawn from his inactivity, while as for the other facts, without the help of proof of a formal conveyance of title, they were, as we have in effect already said, insufficient to prove or disprove ownership.

Nor can any force or effect be given to them as secondary evidence of operative words of conveyance in the deed which appellees suppose to have passed between David and Samuel. Before secondary evidence of the contents of a deed can be considered, it is necessary to establish the fact that such an instrument has once existed. In this case there was no effort to prove the terms of the alleged deed, nor, indeed, was there an effort to prove that an instrument of the sort had ever

existed. Appellees were content to rest upon the witness' statement that she had heard David say that he had made a sale without a syllable as to how the alleged sale had been evidenced or as to the quantum or character of the estate so conveyed.

Upon the considerations stated, we rest our conclusion that, as between the parties to this record, the title to the minerals upon and under the land in suit was in the defendant. The decree should have so declared.— *Sloss-Sheffield Co. v. Lollar,* 170 Ala. 239, 54 South. 272. So far as the surface is concerned, or the land other than the minerals upon and under the surface, the defendant claimed no title, and the decree was right, except that the costs should have been taxed against complainants. A decree will be entered here to accord with the views expressed. Complainants (appellees) will be required to pay the costs incurred in the court below and on this appeal.

Reversed and rendered. All the Justices concur.