(97 South. 822)

## DOE ex dem. WINDSOR REALTY CO. v. FINNEGAN.   (6 Div. 751.)

(Supreme Court of Alabama.   June 7, 1923.
Rehearing Denied Nov. 15, 1923.)

**I. Acknowledgment ⬅═55(1), 62(2)—Certificate of notary conclusive, unless impeached by clear, convincing testimony.**

The certificate of a notary, unless and until impeached, is conclusive of the facts therein stated, which the officer is by law authorized to state, and to impeach it the evidence ought to be clear and convincing, reaching a high degree of certainty, leaving in the mind no fair, just doubts.

**2. Deeds ⬅═207—Evidence held to show execution.**

Where deed was duly acknowledged and certificate of notary unimpeached, evidence *held* to show that defendant executed deed to one under whom plaintiff claims.

**3. Marriage ⬅═50(1)—Evidence held to show grantor was not married.**

Evidence *held* to show grantor was not married, so as to require assent and concurrence of F., her supposed husband, as prescribed by Code 1886, § 2348.

**4. Adverse possession ⬅═85(1) — Where deed claimed a forgery, plaintiff must prove bona fides of its color of title to establish adverse possession.**

Where an instrument purporting to pass title from defendant to plaintiff's predecessor was contended to be a forgery, it was necessary, if plaintiff would establish its adverse possession, or that of those under whom it claimed, to prove the bona fides of its color of title, and that the deed was not a forgery.

**5. Adverse possession ⬅═46—Temporary vacancy incident to change of tenants not break of continuity of possession.**

Where, after 10 years of adverse possession, agricultural lands were unoccupied for a few weeks incident to a change of tenants, such an hiatus for a reasonable time in the actual possession did not break the continuity of the landlord's possession, unless intended as abandonment of possession.

**6. Witnesses ⬅═344(3)—That material witness had differences with his divorced wife, causing termination of his agency, not admissible.**

The law indulges no presumption against a divorced husband, and evidence that a material witness was responsible for differences with his wife (divorced from him at the time of the trial) which caused a termination of his agency for her would not have been admissible in evidence.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by John Doe, on the demise of the Windsor Realty Company, against Mary E. Finnegan. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Cabaniss, Johnston, Cocke & Cabaniss and Stokely, Scrivner & Dominick, all of Birmingham, for appellant.

No brief reached the Reporter.

Harsh, Harsh & Harsh, of Birmingham, for appellee.

No brief reached the Reporter.

SAYRE, J. [1, 2] On a former appeal in this case a judgment for the present appellee was reversed on the ground that the trial court erred in overruling appellant's motion for a new trial. Again we have reached the conclusion that the trial court should have granted appellant's motion for a new trial, but doubt whether it may not be better to omit any discussion of the evidence which has led to this conclusion. However, we state in outline the facts as we find them: Appellee was interested in the estate of one Hewitt, deceased, who died seized and possessed of the land in controversy. In 1887, she being then the widow of one Mills, and a sale of the property for division or other purpose of administration pending, she agreed with Smithson, who represented Harton, under whom appellant (plaintiff in the trial court) claims title—why or on what occasion the agreement was made is not clear—that she would bid in this land and pay for it with money ($1,200, or some such amount) furnished by Smithson, who got the money from Harton, and then make title to Smithson. Smithson furnished the money, appellee, who was then known to everybody concerned as M. E. Mills, bid in the property, and on the day she received a deed from the commissioners appointed to make the sale executed her (M. E. Mills') deed to Smithson. We accept these facts for the reason that the muniments of title bear them out, and because the testimony of Noble Smithson, then a lawyer in Jefferson county, but residing in Knoxville, Tenn., since 1893, against whose candor and freedom from bias at this time nothing is said or, we presume, can be said, not to mention the testimony of Harton, as well as the incredibilities and contradictions affecting the testimony of appellee and her daughter, appear to leave no other course open. Appellee denies the execution of the deed to Smithson; her daughter denies that the name M. E. Mills is in the handwriting of her mother. But the deed was acknowledged in due form before a notary, a man well known and of good repute in his day, and its genuineness is supported by the oath of Smithson, who testifies that it was executed and acknowledged in his presence. The certificate of the notary, unless and until impeached, is conclusive of the facts therein stated which the officer is by law authorized to state, and to impeach it the evidence ought to be clear and convincing, reaching a high degree of certainty, leaving in the mind no fair, just doubts. Logan

---

v. Chastang, 207 Ala. 52, 91 South. 867. We are therefore clear to the conclusion that appellee did execute the deed which put the title out of her and into those under whom appellant claims.

[3] But appellee contends that, even if she executed the deed to Smithson, it still was a nullity, for the reason that it appears to have been executed without the assent and concurrence of her then husband, Finnegan, manifested by his joining in the alienation in the mode prescribed by law for the execution of conveyances of land. Code of 1886, § 2348. Her explanation of the fact that in the transaction with Smithson she used the name M. E. Mills (and by that name must have been known in the administration of her father's estate, for otherwise we cannot conceive that Smithson would have dealt with her as M. E. Mills) is that she wished to protect her children by Mills from any interest or claim her husband, Finnegan, or his children, might acquire therein by his marriage with her—a novel, if ineffectual, scheme. If she executed the deed to Smithson, and did so in pursuance of an agreement which antedated the deed to herself, and in consideration of money previously advanced to her for the purpose (and of these facts we entertain no doubt whatsoever) then of course this explanation falls to the ground, and no reason appears why she should have used the name of her former husband, Mills, who had abandoned her years before, and then died, when the name of her husband at the time was Finnegan. A brother-in-law, one Payne, testified that he remembered that in the fall of 1886, more than 35 years before the trial, appellee told him she was going to Macon to get married. Answering interrogatories propounded to her prior to the first trial, appellee fell into some confusion both as to the time and place of her marriage to Finnegan, which she explains by saying that "it came up so sudden." At the trial of the cause which came under review in Windsor Realty Co. v. Finnegan, 202 Ala. 17, 79 South. 355, she testified that she went to Macon, Ga., in the fall of 1886, "and we got married by the priest,"—"that 'he [Finnegan] was a Catholic, and the Catholic priest married us in the Catholic church' "—meaning, of course, the Roman Catholic church. At the trial now under review she repeated her testimony given at the former trial with a difference which we consider to be of no moment. But on the last trial the ordinary of Bibb county, Ga., in which Macon is located, and in whose office under the law of Georgia all marriage records are kept, testified that the records of his office show the issuance of marriage licenses for the year 1884 and all subsequent years, but that there was no record of any license for the marriage of any woman by the name of M. E. or Mary Mills to any man by the name of Finnegan. There are other considerations presented by the record of more or less significance reflecting unfavorably on the contention that appellee was the wife of Finnegan at the time of the deed to Smithson, but enough has been said to warrant and require, in our opinion, the conclusion that, appellee's deed to Smithson was not void for the reason now urged against it. This weakness of appellee's case is not without appreciation in her camp, for in the brief it is now suggested that a common-law marriage would serve the same purpose; but we can hardly believe that any priest took part in the declaration of such a marriage. Still the point is significant, for the assumption of a common-law marriage assumes also the untrustworthiness of appellee's testimony, given with every aspect of deliberation, as to a ceremonial marriage at Macon, and raises a question (which, however, we do not consider except as it affects the weight of appellee's testimony) to what lengths a woman may go in reliance upon an alleged common-law marriage for the impeachment of her solemn deed executed in a name which implies the repudiation or contradiction of such marriage, one essential element of which is the mutual and open assumption of marital duties and obligations.

[4] It is said in the brief for appellee that appellant has abandoned all question as to the validity of appellee's marriage to Finnegan, and, in fact, all other questions except (1) the question raised by the refusal of the general affirmative charge requested by appellant on the ground that its adverse possession for 10 years had been established without conflict in the evidence, and (2) the question raised on the argument made to the jury by counsel for appellant. Appellee concedes, however, that appellant has expressed its reliance upon the assignment of error based upon the overruling of its motion for a new trial, but suggests that the argument as to the motion rests exclusively on the two grounds noted above. It may be conceded that appellant's brief, so far as comprised under the formal head of "Argument," sustains the interpretation put upon it by appellee; but it cannot be denied that both parties to this appeal have in their briefs stated the evidence with a view to a decision of the issues contested in the trial court, viz.: (1) Whether appellee executed the deed to Smithson; and (2) whether at that time she was a married woman—there being no denial, nor any occasion to deny, that for many years before the trial she had been the lawful wife of Finnegan. Moreover, appellee's contention was that the instrument purporting to pass title from her to Smithson was a forgery. This made it necessary for appellant, if it would establish its adverse possession, or that of those under whom it claimed, as coextensive with the limits of the property in suit, to prove the bona fides, the genuineness, of its color of title (Saltmarsh v. Crommelin, 24 Ala. 347); that the deed which

was the foundation of its color was not a forgery. And, as we have indicated above, the determination that the deed to Smithson was an authentic paper, apart from other weaknesses in appellee's narration, was well-nigh conclusive that it was executed in the right name of the grantor. Those considerations, as well as the fact that the motion for a new trial was based on the comprehensive ground, among others, that "the verdict of the jury was contrary to the great weight of the evidence," seem to require an examination into the validity of the deed to Smithson.

[5] Further consideration is obviously unnecessary, but, conceding for the moment that the jury, in the exercise of their primary right as triers of fact, might have found appellee to have been a married woman at the time she executed the deed to Smithson, the judgment of the court is that, while the issue now to be stated is due to be submitted to the jury in the first place (Snow v. Bray, 198 Ala. 402, 73 South. 542), the great weight of the evidence went to prove that appellant, or tenants holding for appellant and those under whom it claims, was for more than 10 years (nearly 20 years) in the adverse possession of the land in suit, clearing, improving, fencing, and cultivating a part of it (5 or 6 acres) under color of title, with only such intermissions as the changing seasons made necessary in the cultivation of crops, during all of which time appellant and its predecessors paid taxes, and, with the actual knowledge of appellee, and without challenge from her, exercised those acts of ownership which are customary in the case of lands devoted to agriculture (Hughes v. Anderson, 79 Ala. 215; Gary v. Woodham, 103 Ala. 425, 15 South. 840), thus excluding any reasonable conclusion save that by adverse possession, if not otherwise, appellant acquired title. Appellee seizes upon an expression in the testimony of F. L. Erwin, a witness for appellant, and another in the testimony of Mrs. Sharrett, also a witness for appellant, as going to show that appellant failed to prove adverse possession for as much as 10 years. This contention hardly needs argument in detail. It is clear—no fair reading of the testimony of those witnesses can lead to a different conclusion—that the witness Erwin intended to say that, to his knowledge, Sharrett, the tenant, was in possession for about 11 years, and that Mrs. Sharrett, his widow, intended to say, and did in very fact repeatedly say, that her husband had remained in possession for about 14 years, thus corroborating the testimony of appellant; and no slip of tongue, stenographer, or typewriter can suffice to put a different complexion upon the testimony of these witnesses. Sylveston, another tenant, moved on the premises the year after Sharrett moved off, and after him Foster took possession as tenant. It is pointed out in the brief that Mrs. Sharrett testified that "between the time Mr. Sylveston moved out and the time Mr. Foster moved in there was nobody living there"; but that is of no consequence, for before that more than 10 years had elapsed since Sharrett went into possession, the period of vacancy was short, a few days or a few weeks, as well as the witness could remember, and such an hiatus for a reasonable time in the actual possession of agricultural lands, incident to the change from tenant to tenant, does not break the continuity of the landlord's possession, unless there is an intention to abandon possession. Beasley v. Howell, 117 Ala. 499, 22 South. 989; Gary v. Woodham, supra.

Appellee comments on the fact that during a part of the time in question the legal title was in one Baker under a deed executed by Harton and his wife; but Harton testified that Baker never went into possession; that the possession remained in his (Harton's) tenant, he (Harton) collecting rents and paying taxes. Some years afterwards the mortgage for a large part of the purchase money was foreclosed and the title passed back to Harton. The facts in reference to these transitions of title are undisputed, and we find no sufficient reason to doubt the trustworthiness of the supporting testimony. True, Harton's circumstances considered, we are led to suspect that the purpose of the conveyance to Baker was to circumvent the grantor's creditors; but in this we find no sufficient reason for doubting the fact of a continuous bona fide adverse possession.

[6] Errors are assigned upon the remarks to the jury of counsel for defendant tending to arouse prejudice against a material witness for plaintiff on the ground that he was responsible for differences with his wife, from whom, at the time of the trial, he had been divorced, which differences caused her, in 1905, to refuse to allow him further to act as her agent. There was no evidence going to show that the witness in question was blameworthy in bringing about such differences. The law indulges no presumption against the husband, nor would any evidence on the subject have been admissible. However, we presume such cause of exception will not recur in its present form, and for that reason pretermit discussion as to the propriety of these rulings.

The conclusion is that the trial court erred in overruling plaintiff's motion for a new trial.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.