BEATTY, Justice
(dissenting):
I respectfully dissent.
In 1940 John and Hilma Allen, husband and wife, moved onto the land in question. They cleared one acre in the northwest corner and built a small log cabin, and thereafter cleared about an acre per year. Between 1940 and 1958 they never used the entire parcel at any one time, but rotated the planting of a garden. The only part of the parcel continuously used was about one and one-quarter acres around the house site. The Allens did sharecrop some of the land from 1940 until 1958 when they moved to Fairhope. A mentally retarded relative of John Allen’s lived in a log barn for most of the time the Allens were not living at the place. They removed to Fairhope from economic necessity, and then to Robertsdale and to Elsanor, and so they lived away from the land for approximately five years. Shortly after they moved, their log cabin, which had rotted down, burned, destroying the possessions they had left there. During this period of their absence, nevertheless, they visited the place approximately every other week and sometimes every week. There was no dwelling house on the property from 1958 until around 1963, although the log barn was there. During that period no one used the property except for one relative who lived nearby who had a small pea patch on part of the land. At the end of that period they began building another house on the site of the log cabin, and between 1963 and 1978 the property was leased by them to others for farming. The Allens’ mailbox, bearing their name, had been located on the road fronting the land for forty years, it is true, and it was also established that the property had a community reputation as the “Allen place.” There was also testimony to the existence of fences which, although they did not fully enclose the land, were moved from time to time to protect rotating vegetable gardens from stock running at large.
In its decree the trial court found that the plaintiffs have been in the “actual, open, hostile, notorious, continuous, and exclusive possession of the tract ... since the 1940’s.... ” On this appeal the defendants have challenged that finding as having no factual basis; that is, that the evidence does not support a finding that the plaintiff’s possession was continuous over the necessary twenty-year period. My study of the record lends support to that position.
The law places a strict burden upon one who claims title by adverse possession because all presumptions and intendments favor the title, and possessions are not presumed to be hostile to the title. Rabren v. Mudd, 285 Ala. 531, 234 So.2d 549 (1970); Dothard v. Denson, 72 Ala. 541 (1882). Each of the elements, correctly described by the trial court, must be proved, and proved by clear and convincing evidence. Machen v. Wilder, 283 Ala. 205, 215 So.2d 282 (1968); Raper v. Belk, 276 Ala. 371, 162 So.2d 466 (1964); Walthall v. Yohn, 252 Ala. 262, 40 So.2d 705 (1949). The element of continuity is as essential as any other of adverse possession:
“Indeed, ‘the continuity of the adverse possession is the very essence of the doctrine and policy of the statutes of limitation,’ for ‘whenever a party quits the possession the seisin of the true owner is restored, and a subsequent wrongful entry constitutes a new disseisin.’ ” (Snow v. Bray, 198 Ala. 398, 73 So. 542, quoting from Henry v. Brown, 143 Ala. 446, 39 So. 325.)
And in Hoyle v. Mann, 144 Ala. 516, 522, 41 So. 835 (1905), this Court, writing to the element of continuity, stated:
“The very gist of the claim by adverse possession is that for [ten] years the claimant has occupied the land so openly, visibly, adversely, notoriously, and continuously that the owner is presumed to have known it. It would be a strange principle then, which would allow a man to go on the land, set up adverse possession, and then leave it, and claim that his possession remained adverse, merely because he intended to return.”
The Court went on to require that one leaving the land must “keep his flag flying and present a hostile front to adverse pretensions” leaving “under circumstances in *1058 dicating that he has not left possession.” If a person evacuated a place, “leaving no indicia of a continuing possession,” observed this Court in Perry v. Lawson, 112 Ala. 480, 484, 20 So. 611 (1895), “this would be an abandonment of his possession.” (Emphasis added.) Of course, the elements of adverse holding are manifested “by such acts in respect of the land in its condition at the time as comport with ownership — such acts as would ordinarily be performed by the true owner in appropriating the land or its avails to his own use.” Alabama State Land Co. v. Matthews, 168 Ala. 200, 53 So. 174 (1910). So the controlling question before us is whether the facts disclosed, which are essentially undisputed, are sufficient as a matter of law to establish acts which meet the requirement of continuity.
Regardless of what some neighbors thought the Allens were doing, by Mrs. Allen’s own testimony it is clear that the element of continuity was absent during the period between 1958 and sometime around 1963. She moved to Fairhope with the children in April of 1958 and remained there seventeen months. Mr. Allen lived with her there beginning at the end of the following summer and lived with her two years, and at the end of that period they moved to Robertsdale where they lived for a few months. At the end of that period they moved to Elsanor where they built a house with money furnished by two of the children. They lived in Elsanor for something less than two years, according to her testimony, and moved back to the farm sometime between 1961 and 1963 during the month of July.
During the period of time they had vacated the property, their visits from time to time back to the farm were described as “camping,” sitting in the backyard by the log barn, building a fire and cooking snacks. During part of that time her brother-in-law (who had the adjoining place) planted snap-beans in a corner on the west side, just using it as a little garden spot. And for some indeterminate time during their absence another brother-in-law lived on the property when not in the Veterans Administration Hospital at Gulfport and when not with them in Fairhope. They had no lease agreement with him because “he was family.” Cf. Kerlin v. Tensaw Land & Timber Co., Inc., Ala., 390 So.2d 616 (1980).
The fact that the mailbox remained while they were away establishes no element of continuity. There is no evidence that it was anything but a container for the receipt of mail, and the record fails to disclose that while they were away from the land they received any mail through it. Obviously they did not because they lived somewhere else, first Fairhope, then Roberts-dale, and later Elsanor.
It is clear that any claim of title in the plaintiffs under the twenty-year prescription period beginning in 1940 must fail because of the evidence showing that they vacated the property in 1958. And while the place was used for farming between 1940 and 1958, and between 1963 and 1978, they neither planted nor farmed the place between 1958 and 1963, but only camped occasionally around the home place. Thus, their use of the land was distinctively different than that of the other periods. Such a “possession” was constructive only, and cannot support adverse possession. Powell v. Hopkins, 288 Ala. 466, 262 So.2d 289 (1973). But even assuming that the occasional returns constituted acts which “flew their flag,” it is obvious that any such indi-cia of possession were not continuous. Accord, Tensaw Land & Timber Co. v. Rivers, 244 Ala. 657, 15 So.2d 411 (1943). It is equally clear that the twenty-year prescriptive period did not run in plaintiffs’ favor from 1963 or thereabouts until this suit was filed in May 1980.
Under this state of the record, therefore, it was error for the trial court to deny the defendants’ motion for a directed verdict and motion for judgment notwithstanding the verdict. For that reason the judgment in favor of the plaintiffs on their complaint should be reversed.
The defendants’ counterclaim in the form of an ejectment action was likewise disposed of erroneously. The record discloses that the defendant Rohrer adduced evi *1059 dence of title to the parcel which was undisputed. The defendants should be allowed the opportunity to proceed with proof of damages under their ejectment counterclaim if they so desire.
TORBERT, C. J., and JONES, J., concur.